GIBSON, Plaintiff in Error, v. GIBSON *et al.*, Defendants in Error.

1. Where it is sought to invalidate a will on the ground that the alleged testator was under undue influence, and was at the time of the signing the will of unsound mind by reason of intoxication, declarations made by him to the effect that he had never made the will—that if he had signed it they had got him drunk and made him do it, for he had no recollection of it—are inadmissible in evidence.

*Error to Cole Circuit Court.*

This cause comes to this court upon the following agreed statement of facts : On the 26th day of September, 1853, Edward H. Gibson, one of the defendants, produced to the clerk of the Miller county court an instrument of writing as the last will and testament of Hugh Gibson, deceased ; which was admitted to probate as such ; and which said instrument of writing and the probate thereof are as follows :—[Here follow the will and the probate thereof. It is unnecessary to set them forth. By the will, all the property of the said Hugh Gibson was devised to Edward H. Gibson and wife and to their children, the testator cutting off his other children with one dollar each.] In October, 1853, the plaintiff, a son of said Hugh Gibson, filed his petition contesting the validity of the will on the grounds that the testator was under the undue influence of Edward H. Gibson and his wife, and was, when he signed it, of unsound mind from intoxication. These facts were denied by Edward H. Gibson and his wife, and thereupon an issue was made up as required by the statute. The cause was submitted to a jury. It appeared in evidence that Hugh Gibson, at the date of the will, was about seventy years old, and of more than ordinary vigor of intellect of his age, but addicted to intoxication, and when intoxicated incapable of transacting business ; that he lived with Edward H. Gibson, who transacted his business ; and that the will was in Edward H. Gibson's handwriting. The plaintiff then offered to prove by John Bromley and

others that in 1851 or '52, the testator said that he had never made the will ; that if he had signed it, they had got him drunk and made him do it, for he had no recollection of it ; that he was duly sober and in his right mind when he made these declarations.    To this evidence defendant objected, and the objection was sustained.    The plaintiff excepted, and took a nonsuit with leave to move to set the same aside, which motion having been made, was overruled by the court.

*Edwards* and *Gardenhire*, for plaintiff in error.

I.  The court erred in rejecting the declarations of the alleged testator.  (Swinburne on Wills, p. 998–9 ; 1 Sto. Eq. 211 ; 1 Ves. Sen. 284 ; Broom's Leg. Max. 232 ; Smith v. Fenner, 1 Gall. 170 ; Jackson v. Kneiffer, 2 Johns. 3 ; Beel v. Beel, 1 Hawks, 268 ; Trimmer v. Payne, 7 Ves. 517 ; Rambler v. Tryon, 7 S. & R. 90.)

*Parsons* and *Batte*, for defendants in error, cited 2 Johns. 31 ; Moritz v. Brough, 16 S. & R. 403 ; 1 Gallison, 170 ; Provis v. Reed, 5 Bingh, 435 ; Nelson v. McGiffert, 3 Barb. Ch. 158 ; Den d. v. Van Cleve, 4 Wash. C. C. 262.

LEONARD, Judge, delivered the opinion of the court.

Upon an issue of " will or no will," the declarations of the alleged testator are offered in evidence—sometimes as part of the transaction—sometimes as verbal acts (as they have been called) indicating the mental condition of the testator—and at other times as a mere narrative of facts, entitled to credit as such on account of the relation of the speaker to the subject matter.    Whenever the declarations can be considered as falling within the first class of cases, they are of course admissible, upon the common doctrine of the *res gestæ*, and the only question then is, whether they are so connected with the main fact to be proved as to fall within the rule.    They are also clearly admissible when the condition of the testator's mind is the point of contention, or it becomes material to show the state of his affections, and they are then received as external manifestations

Gibson v. Gibson.

of his mental condition, and not as evidence of the truth of the facts he states. *For this purpose, and as a mere narrative of facts, we do not think they ought ever to be received*, and this seems to be the general doctrine of the authorities, although there are certainly conflicting decisions on the subject.

In the English case of Provis v. Reed, decided in 1825, (5 Bingh. 435,) which was a real action by the devisee against the heir at law, and in which the will was impeached on the ground of fraud and undue influence in obtaining it, the heir, after having given other evidence on the point, offered the declarations of the testator, made after the date of the will, to the effect that " the devisee (who was a stranger in blood to the testator) had been trying to get his property, but that he should not have it ; that Scott (the attorney who prepared the will) had drawn up a paper, and they had got him to sign it, but that it was not worth a farthing, and that his land should go to his family". The court rejected the evidence, declaring that declarations of this character, tending to impeach the validity of the instrument, had never been received. And it is believed that there is no English case contradicting this, although the previous equity case of Nelson v. Oldfield (Vernon, 76) is the case generally referred to as an English authority to let in such declarations. It is to be observed, however, that the point to be there decided was whether a will of personalty, proved in the spiritual court, could be controverted in a court of equity ; and, although it appears that the complaints of the testatrix, during her last sickness, as to the means by which she had been induced to execute her will, were read in evidence, no objection was made to the evidence, and the question as to its admissibility was not brought to the attention of the court, but the matter passed *sub silentio*, without any judgment of the court upon the question. In Jackson v. Kniffen, decided in New York, in 1806, (2 John. Rep. 31,.) the declarations made after the will were to the effect that the instrument was not his will ; that he had been forced to sign it, and would have been murdered had he refused to do so ; and were rejected by the court

upon the ground that they were not competent evidence of the facts stated. In Smith v. Fenner, (1 Gall. Rep. 174,) tried before Justice Story, in Rhode Island, in 1812, the defendant, who claimed as heir, in order to prove that the will under which the plaintiff claimed as devisee was obtained by fraud and imposition, offered in evidence the declarations of the testator, made before, at the time, and immediately after the making of the will, and also his declarations made *long afterwards* and during the last seven years of his life. The defendant objected to the last declarations, and they were rejected; but the others were received, no objection being made to them. In Moritz v. Brough, decided in Pennsylvania, in 1825, (16 Searg. & Rawl. 405,) after proof that the wife was a high-tempered woman, with considerable control over her husband, who was of easy temper, the declarations of the testator, made after the will, were offered in evidence to the effect "that the will was not made according to his wish; that he was plagued by his wife to make it as he did, and that he had made it as it was to get clear of her importunity," were rejected by the court. In Comstock v. Hadlyne, decided in Connecticut, in 1830, (8 Conn. 263,) the question was as to the capacity of the testatrix and undue influence in procuring the will, and it having been proved that the testatrix belonged to the Baptist society, and her declarations about the time of making the will having been also proved, to the effect "that the Hadlyne society or Presbyterians were about her as thick as bees to get her property," it was claimed that these declarations were to be regarded by the jury as evidence of the facts thereby asserted. But the court, in which the cause was tried, decided otherwise, and held that they could be used for no other purpose than to prove the state of the mind of the testratrix as to sanity or insanity; and upon an appeal to the Supreme Court, it was there said: "The question is whether the declarations of the devisor, made *about* the time of executing her will, tending to show that she was unduly influenced, ought to have been admitted in evidence. If it was claimed that those declarations

were part of the *res gestæ*, the time when made should have been precisely stated ; and if her declarations were not part of the *res gestæ*, I know not on what principle they can be introduced as evidence of *facts*. Is a will or deed, valid upon the face of it, to be destroyed or in any way affected by the declarations of the devisor or grantor ? Some strong authority is necessary to support such a proposition. In the case of a deed, it would not be claimed. A will, to be sure, is ambulatory, and nothing vests during the life of the devisor. Still, however, it could be altered or revoked only in a legal manner." In Robinson v. Hutchinson, decided in Vermont during the last year, (26 Verm. 38,) it was held that a testator's declarations, made near the time of the execution of the will, are admissible for the purpose of showing the condition of his mind, but not to prove that undue importunity and influence were exerted over him, and that such testimony must be strictly confined to proof of weakness of mind, and can not be admitted to prove the facts stated in such declarations.

The cases, to which we have been referred as establishing the contrary doctrine, are the two from North Carolina—Reel v. Reel, determined in 1821 (1 Hawks, 250), and Howell v. Borden, decided in 1832 (3 Dev. Law R. 442). In the first case, the declarations made after the date of the will consisted in statements of the substance of the will, as the testator understood it, which differed altogether from what appeared from the will itself ; and in the last case, the declarations were that the will was obtained by the fraud and undue influence of the principal legatee ; and in both cases they were received as legal evidence of the facts stated. The court, in stating the grounds upon which the evidence was allowed, remark, in Reel v. Reel, that, " to reject the declarations of the only person having a vested interest, and who was interested to declare the truth— whose fiat gave existence to the will, and whose fiat could destroy, and in doing the one or the other could interfere with the rights of no one—involved almost an absurdity ; that they were not received as part of the *res gestæ ;* and when received, it

would be the duty of the jury to decide whether they contained the truth, or were deceptive in order to delude expectants and procure peace." And it is proper to remark here that Justice Spencer, who dissented in Jackson v. Kniffen, and Chief Justice Gibson, who dissented in Moritz. v. Brough, both thought the declarations were competent evidence, and substantially for the same reason given in the North Carolina case, which seems also to be the ground upon which their admissibility was put by counsel in the English case of Provis v. Reed.

The idea of those, who think that these declarations are competent evidence, seems to be that they are exceptions to the general rule excluding hearsay evidence, upon the principle that lets in the declarations of the owner of property, made while in possession against his own interest, as competent evidence against those who succeed to his rights. But the latter are received, not because the party *had no interest to speak untruly*, as in the case of a supposed testator, (which would let in all hearsay evidence,) but because what he said was *against his own interest at the time of speaking*, which the law deems a sufficient guaranty of their truth, to take such statements out of the rule excluding hearsay evidence. We can not but think however that the admission of such evidence would render testamentary dispositions very insecure, by opening a wide door for the interested and unprincipled to get rid of wills that stood in their way. To guard against fictitious wills, the law has provided with great care such solemnities to be observed in the making of wills as may effectually secure testators against being imposed upon in this respect ; and, in order that wills, when duly made, may be carried into effect, and not be set aside after the testator's death by pretended revocations proved by words only, it has also provided that they shall not be revoked except by a subsequent will, or by the physical destruction of the instrument by the party himself, or in his presence and by his sanction. We are aware that this evidence is offered, not to revoke a will duly made, but to establish that it was never lawfully executed ; but we can not shut our eyes to the fact that it

is quite as easy to prove the testator's declarations, to the effect that the will was obtained from him by violence or fraud, or undue influence, as that he said, "I revoke it," and that, in most cases, it will be quite as effectual with a jury. Again, these declarations, when correctly understood and honestly reported by the witness, can not always be relied upon as a correct statement of the facts they contain. We all know that when men who have made their wills, or are about to make them, are questioned by expectants or the friends of expectants, or when such men, without being questioned, think proper to talk upon the subject, they do not always hold themselves bound to tell the whole truth. It is said to be something like the privilege of voting by ballot—*concealment is here permitted, and deception is sometimes practiced.* A testator may have reasons to wish for quiet, and when disappointments are to happen, the law puts it in his power to escape from the effects of them, and to avoid taking a part in the scuffles that are to ensue about dividing his property. And even men, who do not care about concealment, may often really intend to make a will in a particular way, or to alter one already made, and after declaring such intentions may change their minds. Hence it is that even those judges, who have thought the evidence admissible, have admitted that it is entitled to very little weight. Judge Ruffin, while arguing in Howell v. Borden in favor of the *legal competency* of the evidence, expressed the opinion that, even when the declarations were satisfactorily proved, there were so many reasons for a testator to speak evasively, or even untruly, both of the execution and provisions of his will, besides that of disavowing it in its actual form to be his will, as to prevent much attention from being paid to them by any body; and he declared that if the testator lived long after executing the instrument, and had the possession of it, or could command it, or had it in his power to make another will, or to revoke the objectionable one, and did not, the just conclusion was that the declarations were never made,

or were misunderstood, or were not serious, but intended to deceive.

The just result of the whole matter, we think, is, that these declarations, so far as they are relied upon to furnish evidence of the facts they contain, are mere hearsay, and that there is no ground, either of authority or reason, to exempt them from the rule of law excluding all such testimony. We repeat, however, what we have before remarked, that as mere verbal facts, external manifestations of what is passing within, they are always evidence of the testator's intellect and affections for the time being, provided they are of such a character, either by themselves or in conjunction with other evidence, and are so connected with the making of the will in point of time, as to furnish any reasonable ground of judgment in reference to the testator's mental condition at that time. Accordingly, in Norris v. Shepherd, (20 Penn. 475,) where a person absent from home had by will disposed of all his property to a mere stranger, after other evidence of insanity at the time, and that the testator lived on amicable terms with his sisters, who were his nearest relations, had been given, his declarations, made to a friend just before leaving him, in reference to insuring his life, in which he said, "I will not, as the little I have will go to my sisters," were allowed as evidence of the state of his affections towards them, in order to strengthen the proof of insanity then before the jury ; the court remarking that, under the circumstances of that case, the kind relations of the testator with his kindred was proper evidence, and that these relations could only be shown by the testator's acts and declarations towards them. So again in Waterman v. Whitney, (1 Kernan, Rep. 157,) the question was as to the mental capacity of the testator, and after evidence showing that his mind and memory were impaired at and previous to the time of the making of the will, and that he had not sufficient capacity to make a will, proof was offered and rejected in the original court that the testator had afterwards stated to the witness, and repeated to

others, at different times, up to his death, how he had disposed of his property in his will, which was in a manner entirely different from the actual disposition of it by the will in question. But upon an appeal the evidence was held to be admissible, *taken in connection with the other evidence in the cause*, as a mere fact, showing the want of mental capacity, without any regard to the credit due to it as an assertion of fact; and whatever may be thought of the correctness of the particular decision, the court expressly recognized, and indeed professed to act upon the distinction to which we have referred, between receiving a testator's declarations as evidence of the asserted facts, and allowing them in evidence as mere facts, indicating of themselves the mental condition of the testator at the time they are made. It may frequently be a nice question to determine whether the declarations furnish any reasonable ground for a just judgment in reference to the condition of the testator's mind at the time; and even supposing they do, the question still remains whether his mental condition at that time—whether before or after the date of the will—reflects any light upon it when the will was made, which is the point of time to which the ultimate investigation must be confined; but there can be no difficulty, we think, as to the general rule of law applicable to all such cases.

The present will having been established in the probate court, the allegation to vacate it was substantially that the testator's son Edward and his wife had an undue influence over him, and that they procured him to execute the will when he was so drunk as to be incapable of acting. It is an agreed case as to the facts, which are, as far as they are disclosed, that the testator was about seventy years of age, and of more than ordinary vigor of intellect when sober; that he was addicted to intoxication, and when intoxicated incapable of transacting business; that he lived with his son Edward, who wrote the will, and to whom, together with the son's wife, he gave all his property, cutting off his other children with a dollar a piece. The will having been made in 1849, the petitioners offered to prove

that the testator, in 1851 or in 1852, declared to the witness and others that " he never made the will; that if he had signed it, they had got him drunk and made him do it, for he had no recollection of it ;" and this evidence having been rejected, the only question is, whether it ought to have been received. These declarations considered as mere verbal facts, it is very obvious, furnish no evidence whatever of imbecility of mind, which is a fact always embodied in the question of undue influence. Indeed they were not offered for any such purpose, but as competent evidence, to be submitted to the jury, of the fact substantially asserted in them, " that the testator was so drunk, when he signed the will, as to be unconscious of what he did ;" and for this purpose they were, we think, clearly inadmissible, and were rightly rejected. The judgment is therefore affirmed; Judge Ryland concurring.