# Wheeling.

## DINGES *et al. v.* BRANSON *et al.*

Decided November 16, 1878.

1878
Special Term.

1. Where an instruction asserts a proposition apparently erroneous and is given, and excepted to, the judgment should be reversed, though it is not shown, whether in fact the instruction prejudiced the appellant, or not.

2. The declarations of a testator, or grantor, made either before, or after, the execution of the instrument, are admissible evidence, where the issue involves the mental capacity of the testator, or grantor, at the time the instrument was executed, or undue influence exerted over him at that time.

3. If under any circumstances such declaration should be rejected because too remote from the execution of the instrument, before they would be rejected, the record would have to show when, and the circumstances under which, they were made.

4. Where a father has made a voluntary conveyance to his son of a part of his estate, and a contest arises subsequent to the father's death, as to the competency of the father to make the deed, and as to whether undue influence was exerted over him by the grantee to induce him to make it, the declaration of the grantor, both before, and after the execution of the deed, are admissible, the same as if the contest was about a will devising the same estate.

5. The bill was filed to set aside a deed, alleged to have been made when the grantor was of unsound mind, and procured to be made by the grantee by undue influences exercised over the grantor, and also for partition of the estate among the heirs at law; the grantee, who was one of the heirs at law, files his answer, putting in issue the charges as to the incompetency and undue influence, and disclaims any further interest in his father's lands, than was secured to him by the deed. The

deed is held good, and the bill dismissed, with costs as to the grantee. HELD:

This was not to the prejudice of the appellants.

Appeal from and *supersedeas* to a decree of the circuit court of Hardy county rendered on the 1st day of August, 1876, in a suit in chancery in said court then pending, in which David A. Dinges and others were plaintiffs, and Joseph F. Branson and Lionel F. Branson were defendants, awarded on the petition of said plaintiffs.

Hon. John Blair Hoge, judge of the third judicial circuit, rendered the decree appealed from.

JOHNSON, JUDGE, furnishes the following statement of the case:

On the 21st of July, 1862, William Branson of Hardy county died intestate, leaving the plaintiffs'and defendants, his heirs at law. He was about seventy-three years of age when he died. He was seized of a number of tracts of land in said county, amounting to over twenty-one hundred acres. The bill was filed by the heirs at law, other than Joseph and Lionel F. Branson, against the said Joseph and Lionel. It was filed for a partition of the real estate, of which said William Branson died seized, and to set aside and annul a deed made by said William Branson to the said Joseph Branson for four valuable tracts of said land, two of said tracts known as the Fravel lands and another containing one hundred and fifty-nine acres and the other twenty-nine acres, on the ground that when said deed was executed, on the 8th day of July, 1862, William Branson was of unsound mind, not competent to execute a deed ; that he was suffering from paralysis, by which he had been stricken down five weeks before his death ; that the said Joseph Branson exerted an undue influence over his father, and by fraud and undue influence by him practiced upon his father he, the said Joseph F. Branson, procured the said deed to be executed.

1878
Special Term.
Dinges et al.
v.
Branson et al.

The prayer of the bill was, that the said deed be vacated and annulled, and that partition of the said lands be made among the said heirs, &c.

The defendant, Joseph F. Branson, answered the bill, denying all the allegations and charges of the bill impeaching the validity of said deed, and particularly denying the charge, that his father was mentally incompetent to execute said deed, and also denying all fraud or undue influence, charged against him in the bill.

Testimony was taken on both sides; and on the 10th day of March, 1875, "the cause came on to be heard, &c.," and the court directed an issue, to ascertain the fact "whether the paper writing dated on the 8th day of July, 1862, be the true deed of William Branson, deceased, at the time of the execution thereof."

On the 1st day of August, 1876, the issue was tried; and, the jury found, that the paper writing was the deed of William Branson. On the same day the court entered a decree in accordance with said verdict; and Joseph F. Branson having in his answer waived any right to participate in the partition of his father's real estate, the decree dismissed the bill as to said Joseph F. Branson, with costs.

The bill of exceptions shows, that upon the trial of the issue the counsel of Joseph F. Branson propounded to Jacob Vanmeter, a witness for said defendant, the following question: "State whether you ever had any conversation with William Branson prior to July 8, 1862, and prior to his last sickness, in regard to his real estate, and the disposition he meant to make of the same in whole or in part, and especially in reference to his son Joseph; and if so state what he said, what reasons he gave for such intended disposition of it"? To which question, the plaintiffs, by their counsel objected, as improper and irrelevant; but the court overruled the objection, and admitted the answer to said question; and the plaintiffs excepted. But the record nowhere discloses what answer was given to the question.

The bill of exceptions further shows, that "by con-
sent of parties, by their counsel, in order to bring dis-
tinctly and fully before the jury the extent and purpose,
to and for which the said testimony was admitted, and
to supercede the necessity for a distinct instruction, the
court by like mutual consent prepared and laid before,
the jury a memorandum of said instruction as follows :
"The jury is instructed, that the declarations, made by
William Branson prior to his last sickness in regard to his
intention to make disposition of a portion of his lands, is
to be considered by the jury as bearing upon his capacity
to make the deed of July 8, 1862, at the time of its ex-
ecution. In other words these declarations are not ad-
mitted as evidence to show, that a continuing and con-
templated purpose was then executed, but only to show,
if the jury so find from the evidence in the case, that
when the deed was executed, he had mental capacity to
recollect a former intention, re-adopt and approve it, and
carry it into effect. The jury is also instructed, that
these declarations of his purpose must not be received as
conclusive of the question, whether they may or may not
have been retracted and abandoned. That is a question
for the jury to determine from the evidence." To which
instruction the plaintiffs excepted. These two points are
all that the bill of exceptions contains. From and to
the final decree aforesaid an appeal and *supersedeas* was
allowed.

*Andrew Hunter*, for appellants.

*Robert White*, for appellee Joseph F. Branson, cited
the following authorities :

10 Gratt. 1 ; 25 Gratt. 887 ; 10 W. Va. 122 ; 15
Gratt. 551 ; 11 Gratt. 210 ; *Id.* 182 ; 7 W. Va. 715 ; 12
Gratt. 717 ; 11 W. Va. 584 ; 1 Pen. & Watts. 32 ; 5
Rand. 211 ; 2 Munf. 187 ; 8 Conn. 254 ; 4 Wash. C. C.
265 ; 9 Conn. 102 ; 14 Penn. St. 159 ; 7 Serg. & R. 94 ;
8 Serg. & R. 573 ; 1 Hawks 248 ; 3 Den. 442 ; 29 Conn.

399; 4 Allen 512; 1 Kernan 157; 4 Dutch. (N. J.)
Dinges *et al.* 274; 4 Bradf. 138; 3 W. Va. 629; 40 Penn. St. 483;
v.
Branson *et al.* 17 Ala. 55; 10 W. Va. 156; 7 W. Va. 715; 11 W.
Va. 94.

JOHNSON, JUDGE, delivered the opinion of the Court:

It is here insisted by counsel for appellees, that the
court cannot reverse the decree, because the record does
not show, that the witness answered the question pro-
pounded to him, and as the answer does not appear, the
court cannot say, that the appellant was prejudiced by
such answer.   But the instruction given by the court is
excepted to, and this Court has held in *Strader* v. *Goff,*
6 W. Va. 257, that when an instruction asserts a proposi-
Syllabus 1.   tion apparently erroneous, and is given and excepted to,
the judgment should be reversed, though it is not shown,
whether in fact the instruction prejudiced the appellant,
or not.   The question therefore properly arises here:
Was the said instruction erroneous?   The issue tried
was "whether, the paper writing dated on the 8th day
of July, 1862, be the true deed of William Branson,
deceased, at the time of the execution thereof."   The
bill alleged, that at the time of the execution of said
deed the said Branson had not sufficient mental capacity
to make it; and that the said Branson being of feeble
mind the said Joseph Branson exercised undue influence
over him, and thus induced him to make the said deed.
The answer denies, that he was of unsound mind, or
that said Joseph Branson exercised any undue influence
over him.   The court instructed the jury, "that the
declarations made by William Branson prior to his last
sickness in regard to his intention to make disposition of
a portion of his lands are to be considered by the jury, as
bearing upon his capacity to make the deed of July 8,
1862, at the time of its execution.   In other words these
declarations are not admitted as evidence to show, that
a continuing and contemplated purpose was then ex-
ecuted, but only to show, if the jury so find from the

evidence in the case, that when the deed was executed, he had mental capacity to recollect a former intention, re-adopt and approve it, and carry it into effect. The jury is also instructed, that these declarations, of his purpose must not be received as conclusive of the question, whether they may, or may not, have been retracted or abandoned. This is a question for the jury to determine from the evidence."

Does this instruction assert an erroneous proposition? Upon the trial of an issue involving the mental capacity of the testator, or grantor, may the declarations of the testator, or grantor, made prior or subsequent to the execution of the deed, or will, be given in evidence on the question of mental capacity to execute the instrument? Of course if the declarations were made so near the execution of the instrument as to make them part of the *res gestæ*, according to all of the authorities, they would be competent evidence. But should they be admitted on the question of capacity, when they are no part of the *res gestæ*? Such evidence has been admitted, for such purpose frequently, without objection. *Mathews* v. *Warner*, 4 Ves. 186; *Pemberton* v. *Pemberton*, 13 Ves. 290; *Jarretts* v. *Jarretts*, 11 W. Va. 584; *Cranmer* v. *Anderson*, 11 W. Va. 582; *Starrett* v. *Douglass*, 2 Yeates 46; *Trumbull* v. *Gibbons*, 2 Zab. 140; *Crispell* v. *Dubois*, 4 Barb. 399; *Stewart's ex'rs* v. *Lispenard*, 26 Wend, 261, 312, 314.

Syllabus 2.

In many other cases objections have been made to the introduction of such evidence; and the question as to its admissibility expressly adjudicated.

In *Comstock* v. *Hadlyme*, Eccl. Society, 8 Conn. 254, it was held, that when declarations of the testatrix, tending to show importunity and undue influence, made *about* the time of executing the will, were given in evidence; such declarations were admissible only to show the testatrix's state of mind, and not to prove the *facts* stated. *Kane* v. *Kinne et al.*, 9 Conn. 102.

In *Davis's Appeal from Probate*, 29 Conn. 399, on

the trial of an appeal by the sisters from the probate of
the will, in which the appellants claimed, that the testa-
tor was of unsound mind, and that undue influence had
been used by his brother upon him when enfeebled in
mind, to procure the will, it was held, that evidence of
a declaration of the testator, made a long time before he
executed the will, and before his mind was enfeebled,
that none of his property should ever go to the family
of his brother, was admissible.

In *Rambler* v. *Tryon*, 7 Serg. & R. 90, in which was
a contest as to the validity of a will on the ground of inca-
pacity of the testator, it was held, that the declaration of
the supposed testator, made in the absence of his wife,
the devisee, of the importunity used by his wife and his
father-in-law to procure the will to be made, were ad-
missible.   Duncan, J., in delivering the opinion of the
court said : "The declaration of the testator, that his
wife and father-in-law plagued him to go to *Lebanon*,
that they wanted him to give her all, or he would have
no rest, that he did not want to go to *Lebanon*; this would
be evidence of weakness of mind, operated upon by ex-
cessive and undue importunity.   It forms no objection to
it, that these murmurs of a weak mind were made in the
absence of the devisee.   We should be surprised to hear,
that they were made in the presence of that devisee, an
importunate and teasing wife.   There often will be in-
fluence used in procuring a will ; but this can be no rea-
son to set it aside; but undue importunity, plaguing a
weak man, giving him no rest, until he would give all,
are circumstances to be considered by a jury, in connec-
tion with proof of imbecility of understanding denoting
a man so void of reason, as that he is incapable of man-
aging or disposing of his estate.   *Irish* v. *Smith*. 8 Serg.
& R. 573.

In *Moritz* v. *Brough*, 16 Serg. & R. 403, it was held,
that, to set aside a will duly executed by a man of *com-
petent understanding*, evidence is not admissible of decla-
rations made by him, that he intended differently, and

was importuned by his wife; or of the wife's high temper and interference with the testator in relation to his will. In delivering the opinion of the court Tod, J., said: "It seems to be conceded, that in disputes respecting the insanity of a testator, or imbecility of intellect and consequent imposition, the declarations of the supposed testator have frequently been admitted in evidence. Yet it appears to me, there must be some cases, where parole evidence of the declarations of a testator may not be permitted to defeat a will otherwise valid." It did not appear from the record in this case, that the mental capacity of the testator to make the will was disputed.

In *McTaggart* v. *Thompson*, 14 Penn. St. 149 it is held, that declarations of a testator, though made after the execution of his will, are admissible as evidence of imbecility of mind. The declaration of the testator in this case was, that he had ruined his family, and that he had been deceived and imposed on by persons, who procured him to make his will.

In *Chess* v. *Chess et al.*, 1 Pen. & Watts 32, the question was, whether the *grantor* was sane, when he *executed* a *deed*; and the court held, that declarations of a grantor, made subsequently to the execution of a deed, cannot be given in evidence to invalidate the deed; but when the question to be determined by the jury is, whether the grantor was sane, or insane, at and about the time the deed was executed, it is competent to give in evidence his declarations made soon after the execution of the deed, for the purpose of proving imbecility of mind.

In delivering the opinion of the court in this case Smith, judge, used this language: "The insanity of the grantor was alleged on one side, and denied on the other; and the jury were called to say, whether William Chess was sane, or insane, on the 14th of February, 1823, (the date of the deed.) If under such circumstances, I was required to decide upon the sanity, or insanity of a person, I know not how I could do so, unless I was permitted to judge from his conversations, declarations and

1878
Special Term.

Dinges et al.
v.
Branson et al.

acts. These would be the only means to enable me to form a judgment. Here the defendants offered, and the court received, evidence of the conversations, the declarations and acts of William Chess, not, as supposed, for the purpose of verifying the facts stated in those conversations, but to show the state of his mind, not to affect his deed, not as declarations made contrary to it, after its execution, but to show imbecility of judgment, weakness of intellect, and insanity ; in short to show the true character of his understanding, on and about the 14th day of February, 1823. This, and this alone, was the object of the evidence offered. The court did not decide, that the declaration of the grantor, after deed made, could be received to destroy it; but expressly said, that these declarations were admissible, not as revoking his acts done, but as the means of ascertaining whether William Chess was sane, or insane, weak, or competent. On this point the parties were at issue; the defendants alleged insanity, it therefore becomes incumbent on them to prove it, since every one is presumed to be of perfect mind and memory, unless the contrary be proved. In this case the defendants pursued the proper course, and proceeded to prove William Chess's insanity by the very index of his mind, his conversations, declarations and acts, for which purpose they examined many witnessess. The plaintiff did the same, to prove his sanity, and thus there was brought before the court a mass of contradictory evidence, all of which was fairly and legally submitted to the consideration of the jury."

In *Robinson ex'r* v. *Hutchinson*, 26 Vt. 38, it was held, that the declarations of the testator, made about the time of the execution of the will, tending to show importunity and undue influence, and also to show the state of mind of the testator, are admissible.

In *Boylan* v. *Meeker*, 4 Dutch. 274, it was held that "the conduct and declarations of the testator, both before and after he executed the will, are competent evidence to show his want of capacity, at the time will the was exe-

cuted, where the issue is upon the sanity of the testator;

but conduct and declarations of the testator after the will is made, manifesting ignorance of the will, are not competent to show, that the testator never made the will in question. Where the execution of a deed or will is proved in the mode required by law, the declarations of the grantor or testator, made before or after the execution of the instrument, are not competent to prove fraud, duress, or forgery, or to disprove the execution of the deed or will; they are rejected upon the principle, that they are hearsay, and not under the sanction of an oath; but declarations made at the time the instrument is executed are admissible as part of the *res gestæ.*"

In *Reel* v. *Reel,* 1 Hawks 248, the competency of the testator was involved in the issue; Henderson, Judge, in delivering the opinion of the court, said: "To our minds, to reject the declaration of the only person having a vested interest, and who was interested to declare the truth, whose *fiat* gave existence to the will, and whose *fiat* could destroy, and in doing the one, or the other, could interfere with the rights of no one, involves almost an absurdity, and (with due deference to the opinion of those, who have decided to the contrary, we say it,) they are received, not upon the ground of their being a part of the *res gestæ,* for whether they accompany an act or not, whether made long before, or long after making the will, is entirely immaterial as to their *competency;* these circumstances only go to their weight or credit with the tribunal, which is to try the fact, and the same tribunal is also to decide, whether the declarations contain the truth, or are deceptive in order to delude expectants and procure peace."

In *Howell* v. *Barden,* 3 Dev. 442, evidence was offered " to prove declarations of the supposed testator, made after the execution of the proposed will, tending to show, that it was obtained by fraud and undue influence of the principal legatee." The evidence was rejected by the court below. The Supreme Court held, that the evidence was admissible.

To the same effect is *Roberts, ex'r* v. *Trawick et al.*, 17 Ala. 55. In this case the grounds of the contest were the unsoundness of mind of testator, undue influence and fraud. Chilton, Judge, said : " The proof conduces to establish, that the testator, many years previous to the execution of the will in controversy, had a fixed and settled purpose to make a similar will to the one, he is alleged to have executed. It was then proper, as rebutting the evidence of the contestants, that the will was not the deliberative act of the deceased, but was obtained fraudulently, or by the over-persuasion of his wife or others. It tends to show, that the provisions in the will, which exclude the daughters, were not the result of any suggestion made at, or near the time, when the will was drafted, but that some ten years anterior thereto the testator had declared his intention then to disinherit his daughters, which intention was repeated five years afterwards. This proof should have gone to the jury to be weighed by them in determining, whether in fact the will in question was procured fraudulently, or by the exercise of improper influence, or was made by the deceased in the exercise of a free volition, and in accordance with his intention, when we must presume he was less under the imbecility of mind and body resulting from the decrepitude of old age."

In *Tunison* v. *Tunison*, 4 Bradf. 138, it was held that "where there is room for doubting the strength of the testator's capacity, and for suspecting improper influences brought to bear on his volition, his previous declarations as to his testamentary intentions may be received in evidence; but they diminish in importance as the grade of capacity increases, and have no value whatever, when the mind is sound and vigorous."

In *Waterman* v. *Whitney*, 1 Kernan 157, there is an able review of the decisions on this subject by Judge Seldon. In this case evidence had been given to the jury tending to show, that the mind and memory of the testator, who had been a man of vigorous intellect, were

impaired at, and previous to, the time of the execution of the will, and that he had not mental capacity to make a will. The defendants offered to prove by a witness, that the testator *after* the execution of the will, had stated to witness, how he had disposed of his property in his will, which was in a manner entirely different from the actual disposition of it by the will in question. They further offered to prove, that the deceased "made similar declarations to others from the time of the execution of the will, up to the time of his death." Evidence of all such declarations was objected to, and the objections sustained. The Court of Appeals held, that the declarations were admissible, and reversed the judgment of the *Supreme* Court, before which the case had been tried, and remanded the case for a new trial to be had, Gardner, Chief Justice, dissented; the other five judges concurred in the opinion of Judge Seldon.

After reviewing a number of decisions Judge Seldon says on page 164: "These cases must, I think, be sufficient to establish the position, that declarations of a testator, made either *before* or *after* the execution of the will, are not competent evidence to impeach its validity, on the ground of fraud, duress, imposition or other like cause." * * * "The difference is certainly very obvious between receiving the declarations of a testator, to prove a distinct external fact, such as duress or fraud for instance, and as evidence merely of the mental condition of the testator. In the former case, it is mere hearsay, and liable to all the objections, to which the mere declarations of a third person are subject; while in the latter it is the most direct and appropriate species of evidence. Questions of mental capacity and undue influence belong in this respect to the same class; because, as is said by Jarman in his work on Wills. 'The amount of undue influence, which will be sufficient to invalidate a will, must of course vary with the strength, or weakness of the mind of the testator,' 1 Jarman on Wills 36. So the mental strength and condition

of the testator is directly in issue in every case of alleged undue influence; and the same evidence is admissible in every such case, as in cases where insanity, or absolute incompetency, is alleged. It is abundantly settled, that upon either of those questions, the declarations of the testator, made *at* or *before* the time of the execution of the will, are competent evidence."

To the same effect is *Neel et al.* v. *Potter et al.*, 40 Penn. St. 483, and *Norris* v. *Sheppard*, 20 Penn. St. 475, in which Black, Chief Justice, announced the opinion of the court. In the last mentioned case was an issue *devisavit vel non*. The learned Chief Justice says with his usual vigor: "It is doubtless true, that a testamentary writing, duly and solemnly made by a man of sound mind and memory, cannot be defeated by proof, that his intentions were different at a previous time. But when one disposes of all his property to a mere stranger, and evidence is produced to show, that he was insane, when he did it, the contesting party may prove, that his relatives were near to him in affection as well as blood, and thus increase the improbability, that the will was the result of his deliberative judgment. How can this be proved except by his acts and declarations? There may be cases where such declarations would amount to very little, as where they express an intention in favor of persons not at all, or very remotely, connected with the testator, and the will gives the property to an intimate friend. But it might also happen, that evidence of this kind would carry irresistible conviction with it. For instance suppose the testator to have a wife and children, for whose sake he has labored industriously all his life, declaring his purpose to leave them all his fortune down to the moment, when the delirium of a fatal illness clouds his understanding, or fills it with delusions, and then for the first time, and without any assignable reason, he expresses his intention to disinherit the objects of his natural love, and give his property to one, whom he has never seen before. . I do not say, that this is a case like

the one last supposed; but the testator's declarations, 1877
Special Term.

Dinges et al.
v.
Branson et al. considered with reference to the other facts, were strong and pertinent evidence, not only admissible, but entitled to great weight with the jury."

It was held by this court in *Thompson et al.* v. *Updegraff et al.*, 3 W. Va. 629, that the declarations of a testator are admissible in evidence for the purpose of showing the state, condition and operations of his mind, at the time of the execution of the will.

The following cases have been relied upon as being opposed to the admission of such testimony. *Provis & Rowe* v. *Reed*, 5 Bing. 435; *Jackson* v. *Kniffen*, 2 Johns. 31; *Smith* v. *Fenner*, 1 Gall. C. C. 170; *Stevens et ux.* v. *Vancleve*, 4 Wash. C. C. 262; and we may add as coming within the same class of decisions, *Gibson* v. *Gibson*, 24 Mo. 227; *Cawthorn* v. *Haynes*, *Id.* 236.

*Provis & Rowe* v. *Reed* cannot be regarded as an authority against the admission of the declarations of the testator. In that case the record does not show, that the capacity of the testator to make the will was at all in issue; and the declarations themselves offered in evidence show, that the testator understood perfectly what he was doing, when he executed the will. The declarations offered were, "Tom Reed" the defendant "has been trying to get my property, but neither he, nor his ———, shall have it. Scott drew up a paper, and they got me to sign it; but never fear, I know, that it is not worth to Reed one farthing." "My land goes to my own family. Peggy" (one of the defendants) "remember the land is yours; if I don't live to make my will, when I am dead see that you are righted."

Best, Chief Justice, said, "It has been insisted, that declarations of the testator were admissible in evidence to show, that the will, he had executed, was not valid; but no case has been cited in support of such a position; and we shall not for the first time establish a doctrine, which would render useless the precaution of making a will, for if such evidence were admissible, some witness

would constantly be brought forward to set aside the most solemn instruments."

In this case was the attempt made by proof of the subsequent declarations of a testator, who was admitted to be of sound mind, when the will was executed, to set aside his will as invalid. This was manifestly improper testimony according to reason and all the authorities.

In *Jackson* v. *Kniffen*, evidence was offered to prove, that when the testator executed the will, he was *under duress*; that he executed the will, because he feared he would be murdered, if he refused. The question of mental capacity, or undue influence, was not involved in the case; and the evidence was properly rejected, as we have seen from the authorities.

In *Smith* v. *Fenner*, 1 Gall., evidence of the declaration of the testator was offered in evidence to show, that the will was procured by fraud, circumvention and imposition. The mental capacity of the testator was not in issue, for in declaring the evidence inadmissible Story, Justice, said : "Especially in the present case, the evidence is inadmissible, inasmuch as the testator lived in the full possession of his mind for many years after the execution of the will, and it is in proof, that it remained completely in his own possession during all that time, and was found in his possession at his death."

In *Stevens et ux.* v. *Vancleve*, 4 Wash. C. C., one of the questions, and a very important one in the case, was, "whether the testator, at the time the will was executed, was of sound and disposing mind and memory." During the trial the defendant's counsel offered evidence to prove, that the uniform declarations of the testator in favor of the defendant from the year 1802 had been consistent with the disposition made of his property by the will of 1817. "This was objected to as being inapplicable to the only question in the case : the competency of the testator to make his will ; the counsel for the plaintiff

1878
Special Term.
———
Dinges et al,
v.
Branson et al.

disavowing any intention to charge the defendant with fraud, or improper conduct in obtaining the will." Washington, Judge, said: "The declarations of a party to a deed, or will, whether prior or subsequent to its execution, are nothing more than hearsay evidence; and nothing could be more dangerous than the admission of it, either to control the construction of the instrument, or to support or destroy its validity. If the evidence is offered in support of the instrument, it could only have that effect upon the supposition of a uniform consistency of these declarations, not only with the instrument itself, but with the secret intention of the party at all times after these declarations were made. And yet how unsafe a criterion would this be, when most men will acknowledge the frequent changes of their intentions respecting the disposition of their property by will, before they have committed them to writing. The uniform consistency of these declarations is the chief ground, upon which the whole argument in favor of the evidence is vested, and yet if the evidence be admitted at all, the plaintiffs would be at full liberty to prove opposing declarations of the testator at other times; and thus a door would be opened to an enquiry in no respect pertinent to the main subject of investigation, but mischievously calculated to perplex and mislead the jury. That such evidence has sometimes been given is proved by many of the cases read by the defendant's counsel; but it would be very unsafe to consider these instances as laying down a rule of law, since in none of them was an objection made to the admission of the evidence, so as to submit its competency to judicial enquiry and decision."

The evidence was therefore held inadmissible. At the time this ruling was made, in 1822, but two of the cases cited above had been decided, to-wit, *Rambler* v. *Tryon* and *Reel* v. *Reel*, and both of them in 1821. All the authorities agree with Judge Washington, that such evidence is inadmissible, *either* to control the construc-

1878
Special Term.

Dinges et al.
v.
Branson et al.

tion of the instrument, or to support, or destroy its validity. The only ground, upon which such declarations are held admissible, is to throw light on the question of the mental capacity of the testator, or of undue influence exerted upon him to prove the execution of the will. In the case we have been considering the testator's mental capacity to make the will was directly involved in the issue, and it is therefore a decision against the admissibility of such declaration to affect the question of mental capacity, at the time the will was executed.

In *Gibson* v. *Gibson*, 24 Mo. 227, the declaration offered was: "He never made the will; that if he had signed it, they had got him drunk and made him do it, for he had no recollection of it." The evidence was rejected and Leonard, J., in delivering the opinion of the court said: "Whenever the declarations can be considered as falling within the first class of cases, they are of course admissible, upon the common doctrine of the *res gestæ*; and the only question then is, whether they are so connected with the main fact to be proved, as to fall within the rule. They are also clearly admissible when the condition of the testator's mind is the point of contention, or it becomes material to show the state of his affections; and they are then received as external manifestations of his mental condition, and not as evidence of the truth of the facts he states. * * * These declarations, considered as mere verbal facts, it is very obvious, furnish no evidence whatever of imbecility of mind, which is a fact always embodied in the question of undue influence. Indeed they were not offered for any such purpose, but as competent evidence to be submitted to the jury of the fact substantially asserted in them, that 'the testator was so drunk, when he signed the will, as to be unconscious of what he did;' and for this purpose they were, we think, clearly inadmissible."

In *Cawthorn* v. *Haynes*, *Id.* 236, the opinion is pronounced by the same Judge, and the former case relied upon, although the cases are entirely different. The

facts of the latter case are similar in some respects to those in *Reel* v. *Reel* and *Waterman* v. *Whitney*. The declarations offered in the last Mo. case were: "That the legatee's mentioned in the will, should never have any of his property," and also: "that he had no will."

Leonard, Judge, said: "We first remark, that although this case has been argued before us, as if the validity of the will had been really contested on the ground of the testator's mental incapacity, or of undue influence exerted over him, yet no evidence whatever was given at the trial, or even offered, tending to establish either fact, except the rejected declarations, * * *. The defendant gave no evidence at all, except the previous deposition of one of the subscribing witnesses for the purpose of contradicting him; but offered to prove that the testator, on various occasions before the date of the will, and afterwards up to the time of his death, stated, that the legatees mentioned in the will 'should never have any of his property,' and also on several occasions afterwards, that 'he had no will.' * * * And in the present case, we are clearly of opinion that the declared purpose of the testator, that those children should not share his bounty, made before, and repeated after, the date of the will, wholly unsupported as it was by any evidence whatever of incapacity or undue influence, would not have justified the jury, in point of law, in finding against the will. We do not mean to say merely, that under the circumstances the evidence was insufficient, in point of fact, to produce conviction; but to declare, as a matter of law, that the declarations, alone and unsupported by other facts, did not furnish any legal evidence whatever of the testator's alleged incapacity, or of undue influence, and of course their exclusion furnishes no ground whatever for reversing the judgment."

This case draws a distinction, not made by any of the cases we have cited, that is, where there is testimony outside of the declarations of the testator when mental capacity, or undue influence exerted over him, is in

1878
Special Term.
——
Dinges et al.
v.
Branson et al.

issue, such declarations are admissible; but when there is no evidence on such issue, except the declarations themselves, they are inadmissible. It seems to us this distinction is not founded in reason. The declarations of the grantor or testator, upon such an issue, are either admissible, or inadmissible; what is *sufficient* evidence of the testator's capacity or incapacity at the time of the execution of the instrument is another question.

Upon a full review of the authorities, our conclusion is, that the declarations of a testator, or grantor, made either before, or after the execution of the instrument, are admissible evidence, where the issue involves the mental capacity of the grantor, or testator, at the time the instrument was executed, or undue influence exerted upon him at that time. The object of the testimony is to throw light upon such issue; and it may often do so.. The light so shed upon the issue by such evidence may be bright or dim according to circumstances. If there is strong evidence of the testator's incapacity at the time the instrument was executed, and his declarations show, that his will is in accord with his previous declarations, those declarations might go far to enable a jury to find the truth of the matter; and so, if the contents of the will are unreasonable and contrary to the intent of the testator as shown by his declarations. They are not received to show the truth of what is contained in the declarations themselves, but to show the condition of the testator's mind, at the time the deed, or will, was executed. It has been repeatedly held, and it was so held in two recent cases in this Court, *Cranmer* v. *Anderson*, 11 W. Va. 562 and *Jarrett* v. *Jarrett, Id.* 584, that the condition of the grantor's mind, both before and after the execution of the deed, is proper to be considered in determining what was his mental condition, at the time the deed was executed. This being true, how could his mental condition be shown, if his conversations and declarations, the best indices of the mind, are to be disregarded?

Sometimes the declarations are near the execution of the instrument, and sometimes remote. In *Neel* v. *Potter*, 40 Penn. St. 484, the testimony received and excepted to was of declarations of the testator running back to a period of nearly thirty years, and up to within a much later period, that he intended to "leave his farm in the name of Neel," and similar expressions to witness at different and distant intervals. The court by Thompson, J., said: "We are of opinion, that it was clearly competent, certainly on the point of undue influence. It would strongly rebut the idea of any such influence on the mind of the testator, when making his will, if it were shown, that he made it in accordance with a long cherished purpose, and especially when in the execution of that purpose he was keeping it, not only in the name, but amongst his own blood relations."

In *Davis's Appeal, supra,* on the trial the appellants offered to prove by one Asher Chapman, that *long before* the testator executed the will, and before there was any pretence, that his mind had become impaired, or unsound, he had declared, that "none of his property should ever go into the family of Ledyard Park." The evidence was objected to and rejected. The will gave a large portion of his property to Ledyard Park and to his family. On appeal, Hinman, J., in speaking of the remoteness of the declaration said: " In our opinion the correct course would have been to admit the declaration made by the testator, and let the jury weigh it in connection with the length of time which had elapsed since it was made, and any other circumstances, if any existed, calculated to strengthen, or weaken it.   *   *   *   The court cannot enter into an enquiry as to the attending circumstances, with a view of determining upon the admissibility of the evidence. This would be but one mode of estimating its weight and importance, under the circumstances, which is the province of the jury alone. We think therefore, that on the ground of the exclusion of this evidence, there must be a new trial."

In *Roberts, ex'r* v. *Trawick, supra,* such evidence was admitted of declarations made ten years before, and repeated in five years before, the death of the testator.

In *Waterman* v. *Whitney, supra,* Seldon J., said: "It does not follow  *  *  that evidence of this nature is necessarily to be received, however remote it may be in point of time from the execution of the will. The object of the evidence is to show the mental state of the testator at the time, when the will was executed. Of course therefore it is admissible, only where it has a legitimate bearing upon that question; and of this the court must judge, as in every other case, where the relevancy of testimony is denied. If the judge can see, that the evidence offered cannot justly be supposed to reflect any light upon the mental condition of the testator at the time of making the will, he has an undoubted right to exclude it. In the present case it was impossible for the judge to say this in advance of any information as to the precise period, when, and the circumstances under which, the declarations proposed to be proved were made."

It is unnecessary here to decide, whether declarations of the testator or grantor, made at any time however remote from the execution of the instrument, are admissible; there is nothing in the record here to show, when the declaration was made, how near to, or remote from, the execution of the deed, and if such declarations should under any circumstances be excluded, because remote from the execution of the instrument, which we do not now determine, the record here does not show, that the declarations given in evidence ought to have been excluded for any such reason; for we are not informed when such declarations were made. The court did not err in giving the instruction to the jury.

It is insisted by appellant's counsel in the argument, that if such declarations were admissible in a contest about a will, they would not be as to a deed. I can see no distinction in the two cases. The enquiry is in both cases as to the mental condition of the testator or grantor,

at the time the instrument was executed. *Chess. v. Chess,* 9 Penn. & Watts. 32; *Greer v. Greers,* 9 Gratt. 330.

It is not necessary in this cause however to lay down the proposition so broadly. What we do decide in this cause is, that where a father has made a voluntary conveyance to his son of a part of his estate, and a contest arises subsequent to the father's death as to the competency of the father to make the deed, and as to whether undue influence was exerted over him by the grantor, to induce him to make it, that the declarations of the grantor, both before and after the execution of the deed, are admissible, the same as if the contest was about the execution of a will, devising the same estate to the son:

The last error assigned is, that the court should not have dismissed the bill as to Joseph F. Branson with costs, upon the simple recital in his answer, that he claimed no further share in his father's lands. The suit was brought for partition as well as to set aside the deed made to Joseph F. Branson. In his answer Joseph F. Branson claims, that his father gave him the lands mentioned in the deed as his share of his father's estate, and by the same answer disclaimed any interest in the remaining lands. What then was the objection to dismissing the bill as to him? He had fought the fight made against him, and prevailed, and on the final hearing would certainly have been entitled to his costs; he disclaimed any right to any share in the other lands, and by decree the court certainly could properly on such a state of the case divest him of any legal title he had to any of the said lands; and while it may have been premature to have dismissed the bill as to him at that time, yet we cannot see, that this action of the court prejudiced in any way the rights of the appellants.

We see no error in the decree complained of; and it is affirmed with costs and $30.00 damages.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.