# CHARLESTOWN.

## Mason v. Harper's Ferry Bridge Company.

Submitted January 27, 1882—Decided August 25, 1882.

*(Snyder, J., Absent.)

| 20 | 223 |
|----|-----|
| 34 | 474 |
| 34 | 783 |
| 20 | 223 |
| 35 | 491 |
| 35 | 516 |
| 36 | 240 |
| 20 | 223 |
| 37 | 173 |
| 37 | 483 |
| 20 | 223 |
| 38 | 323 |
| 20 | 223 |
| 43 | 117 |
| 43 | 445 |

1. The decree of the Supreme Court of Appeals upon questions decided by the court below is final and irreversible; and upon a second appeal in the cause the questions decided upon the first appeal can not be reviewed. (p. 230.)

2. When the Appellate Court makes a decree and sends the cause back for further proceedings, there can not be a bill of review to correct the decree of such Court for error apparent. (p. 230.)

3. By error apparent is meant such, as appears upon the face of the proceedings; and that includes all that was in issue. (p. 230.)

4. When the Supreme Court of Appeals has executed its power in a cause before it, and its final decree requires some further act to be done, it will send its decree to the court below to be executed. Whatever was before the Court and disposed of is considered finally settled. The inferior court is bound by the decree as the law of the case, and must carry it into execution. That court can not examine it for any other purpose than to execute it, nor give further relief. (p. 230.)

5. Upon the trial of an issue *quantum damnificatus* to ascertain the damage to a ferry-franchise by the construction and operation of a bridge, for the purpose of ascertaining such damage it is proper for the jury to consider the revenues derived from the exercise of the ferry-franchise, while the ferry proprietor was landing his boat on the land of another, rather than on his own landings, even though he was a trespasser, while so landing his ferry-boats. (p. 232.)

6. Upon such an issue it is not error for the court to refuse to instruct the jury, that the plaintiff is bound to show his ownership of the property damaged at the time of the trial, when upon a former appeal his ownership of the ferry-franchise was settled in his favor. (p. 234.)

7. Upon the trial of such issue it was not error to instruct the jury, that the ferry-proprietor had the right to land his boats at the foot of Tell street, Harper's Ferry, without the consent of the

---

*Submitted before Judge S. took his seat on the bench.

council of said town, the order of the county court granting leave to establish the ferry having designated "Tell street" as one of the landings of said ferry, and the charter granted Harper's Ferry not prohibiting such landing, and there being no statute-law prohibiting such landing at a public street in a town. (p. 235.)

8. Upon the trial of such issue it was not error to instruct the jury, that if at the time of the trial the jury believed, that the landings of the ferry were not safe and convenient, and that by the expenditure of money they could be made safe and convenient, that they must find for the plaintiff such damages, as they may ascertain his ferry-franchise would sustain by reason of the erection and use of the bridge less the amount of the costs of making said landings safe and convenient. (p. 236.)

9. Upon the trial of such issue the right of the ferry-proprietor to the ferry-seat on the east side of the river on the former appeal having been determined, evidence tending to show, that he did not then legally possess such ferry-seat was properly excluded as irrelevant. (p. 237.)

10. Where an erroneous instruction has been given to the jury, the presumption is, that the exceptor was prejudiced thereby; and the judgment will be reversed for this cause, unless it clearly appears from the record of the case, that the exceptor could not have been prejudiced by the giving of such erroneous instruction, in which case the judgment will not be reversed for such cause. (p. 239.)

11. Upon the trial of an issue *quantum damnificatus* as to a motion to set aside the verdict and grant a new trial the same rule applies, as in an issue out of chancery, or in an issue *devisavit vel non*; and that rule is, that where the evidence is certified and not the facts proven, the Appellate Court will not reverse the decree, set aside the verdict and grant a new trial of the issue, unless by rejecting all the parol evidence of the exceptor in conflict with the evidence of the other party and giving full faith and credit to that of the advers party the judgment of the court in overruling the motion for a new trial still appears to be wrong. (p. 241.)

12. Upon the trial of such an issue to ascertain the amount of damages sustained by a ferry-franchise by the erection and operation of a bridge the jury are to regard the franchise as permanent, and in estimating the damage will not take into consideration the fact, that the Legislature may repeal the law creating the exclusive privilege of transporting persons and things across the river within half a mile of the ferry. (p. 241.)

13. The court erred in its decree ordering the money ascertained as damages to the franchise to be paid to the plaintiff, in adding to such decree, "and execution may issue upon this decree," as

the Bridge Company might abandon the bridge, and would not then be compelled to pay the money.   (p. 243.)

Appeal from and *supersedeas* to a decree of the circuit court of the county of Jefferson rendered on the 18th day of June, 1881, in a cause in said court then pending, wherein James M. Mason was plaintiff, and the Harper's Ferry Bridge Company was defendant, allowed upon the petition of said defendant.

Hon. Charles J. Faulkner, Jr., judge of the thirteenth judicial circuit rendered the decree appealed from.

The facts of the case are stated in the opinion.

*Daniel B. Lucas* for appellant cited the following authorities: 2 Mich. 427; 6 W. Va. 358; 17 W. Va. 396; Mills Em. Dom. § 1; 17 W. Va. 812; Acts 1875 ch. 114; Mills Em. Dom. §§ 76, 160, 161, 255; 1 Leigh 1; 2 Rob. 241; 10 Gratt. 12; 20 Gratt. 484; 7 Gratt. 228; Code 280; J. J. Marsh. 142; 5 Dana 103; 3 Marsh. 322; 8 Dana 53; 12 Leigh 235; 2 Rob. 463; 63 Barb. 574; 10 Metc. 471; 5 Mass. 437; Const. Art. VIII § 2; Acts 1872–3 ch. 117 § 39; Mills Em. Dom. § 174; 5 Gray 35; Code p. 166 § 63; *Id.* ch. 44 § 13; *Id.* ch. 144 § 13; *Id.* ch. 43 § 33; 18 Tex. 874; 7 Ind. 9; 1 Black (U. S.) 603; 2 Rob. 225; Dill. Mun. Corp. §§ 518, 519; Mills Em. Dom. § 202; 3 Rand. 563; Code p. 282 § 9; 2 Rev. Code ch. 238; Code Va. (1849) ch. 64 §12; 12 Leigh 307; 16 W. Va. 312; 10 Barb. 360; 15 Barb. 193; 4 Cush. 63; 34 Me. 247; 27 Vt. 39; 54 E. C. L. 608.

*Charles J. Faulkner* for appellant cited the following authorities: 9 Wheat. 376; 1 Pet. 275; *C. & P. R. R. Co.* v. *Francis,* 7 Ill,: 6 Gratt. 277; 26 Gratt. 585; 27 Gratt. 450; 2 Rob. 219; 7 Gratt. 212; 20 Wend. 120; 4 T. R. 417; *Id.* 718; *Id.* 753; 1 Gra. New Trials 261–270; 3 Gra. New Trials 768; *Id.* 774; 14 W. Va. 104; 6 W. Va. 257.

*James M. Mason* for appellee cited the the following authorities: 26 Am. Dec. 110; *Henry* v. *Davis,* 13 W. Va.; *Sears* v. *Terry,* 26 Conn.; *Bumstead* v. *Ried,* 31 Barb.; *Lincoln* v. *Tower,* 2 McLean; *Id.* 511; 1 Seld. 598; *Id.* 497;

*Churchill* v. *Grundy*, 5 Dana; *Searl* v. *Gabraith*, 73 Ill.; 9 J. J. Marsh 138; *Id.* 142; *Kennedy* v. *Covington*, 8 Dana; *Fay's Petition*, 15 Pick.; *Haine* v. *Commack*, 6 Dana; *Givings* v. *Ferguson*, 6 Mon.; *Wimbish* v. *Sommerville*, 7 Gratt.; *Col. Br.* v. *Grisse*, 39 N. J. L.; *Conway* v. *Taylor*, 1 Black (U. S); 12 C. B. (N. S.) 104; 12 East 385; *Huzzy* v. *Field*, 2 Crom. M. & R.; *Tim* v. *Currell*, 6 Mee. & W.; *Peter* v. *Kendall*, 6 B. & O.; *Coles* v. *Miller*, 8 Gratt.; *Masters* v. *Varner*, 5 Gratt.; *Hale* v. *Walton*, 9 Gratt.; 6 Dana 20; *Adams* v. *Tierman*, 5 Dana; *Mason* v. *Tuttle*, Va. L. Jour. (Chy. 1881); 13 Abb. Dig. p. 378 §§ 3969, 4063, 3958; *Ward* v. *Churn*, 18 Gratt.; *Adams* v. *Gov.* 22 Ga.; *People* v. *Bagnell*, 31 Cal.; *Hooksett* v. *Co.*, 44 N. H.; *Lyman* v. *Redman*, 23 Me.; *Casio* v. *Keen*, 53 Me.; 21 Me. 450; *Beaty* v. *B. & O. R. R. Co.* 6 W. Va.; *Calvin* v. *Menefee*, 11 Gratt.; *Pitman* v. *Breckenridge*, 3 Gratt.; *Haithcock* v. *Swift M. Co.*, 72 N. C.; *Fisher* v. *Higgins*, 5 Mon.; 1 Dana 260; *Steff* v. *Huntington*, 16 W. Va.; 6 Gratt. 370; *Jas. R. C.* v. *Littlejohn*, 18 Gratt.; *McNew* v. *Smith*, 5 Gratt.; *Cook* v. *Hays*, 9 Gratt.; *Herd* v. *Colbert*, 28 Gratt.; *Anderson* v. *Desoer*, 6 Gratt.; 20 Am. Dec. (8 Conn.) 110; *Sears* v. *Terry*, 26 Conn.; 25 Gratt. 387; *Bates* v. *Spooner*, 45 Ind.; Code p. 280 § 2; 1 Bailey 473; 1 Murphy 279; 7 Humph. 86; 12 Gratt. 153; 2 Rob. 225; *Danville* v. *Waddill*, 31 Gratt.; Bart. Pra. 253; *Bell* v *Alexander*, 21 Gratt.; 27 Gratt. 1009; *Bennett* v. *Hardaway*, 6 Munf. Bart. Prac. 220; *Id.* 219; *Hodge* v. *Bank*, 22 Gratt.; *Vaiden* v. *Com.*, 12 Gratt.; 6 Munf. 457; *Dinges* v. *Branson*, 14 W. Va.; 6 W. Va. 269.

*Baylor and Wilson* for appellee cited 12 East 348; *Id* 332; 6 B. & C. (13 E. C. L.) 302; and Code p. 282 § 9.

JOHNSON, PRESIDENT, announced the opinion of the Court.

This case has been before this Court once before. 17 W. Va. 396. The Harper's Ferry Bridge Company, as that record shows, was about to construct a toll bridge across the Shenandoah river at Harper's Ferry. Mason had a ferry across said river at the same place; and he filed his bill of injunction to restrain the company from erecting and operating said bridge, on the ground that it would *damage* his ferry-franchise, and that under the Constitution of 1872 pri-

vate property could not be taken or *damaged* for public use without just compensation. The court below dissolved his injunction and dismissed his bill. Mason appealed; and this Court reversed the decree of the circuit court and decreed, as the circuit court should have done, that "so far as the injunction restrained the defendants from constructing and using the bridge mentioned in the bill, until compensation for the damage caused to his ferry-franchise by the construction and use of said bridge was paid, or secured to be paid, to the plaintiff, the said injunction is hereby continued in full force and effect. And it is ordered that this cause be and the same is hereby remanded to the circuit court of Jefferson county with instructions to award an issue *quantum damnificatus*, * * * to assess the damage to the ferry-franchise of the plaintiff by the construction and use for public travel of the toll-bridge of the defendant across the Shenandoah river at Harper's Ferry; and should either party demand it, said issue shall be tried by a jury of twelve freeholders; and when said jury shall have ascertained said damage by their verdict, the said circuit court shall decree the same to be paid to the plaintiff together with the costs of the suit, and until said damages so ascertained and decreed be paid to the plaintiff, the said circuit court shall continue the injunction aforesaid in full force and effect; but when said damages are fully paid to the plaintiff the said injunction is to be wholly dissolved."

On the 25th day of June, 1881, the circuit court in pursuance of said mandate ordered said issue.

On the second day of June, 1881, by leave of the court the defendant filed its supplemental answer averring, that since the decree appealed from was rendered, it had become the owner of certain ferry-rights, which, it alleged, had been owned by the United States, and has also become the owner of the realty, whereon the alleged ferry of Mason had been landed, and that said Mason has no ownership over the same, nor has he contracted with any one for the use of the same, but that the same is wholly vested in the respondent; and that furthermore all right, title and interest of the government of the United States in the ferry sold as aforesaid and situated as hereinbefore described have become vested in

and are now owned by respondent, and exhibits his deed for the said right, title and interest. The defendant replied generally to the answer.

On the 2d day of June, 1881, a jury of twelve freeholders was impannoled to try said issue. On the 8th day of June, 1881, the jury rendered a verdict assessing the damage to the ferry-franchise of the plaintiff at ten thousand dollars. On the 18th day of June, 1881, the court overruled a motion to set aside said verdict and grant a new trial, and signed and sealed nine several exceptions to the rulings of the court pending the trial of the issue, and directed the clerk of the court to certify to the chancery side of the court the verdict of the jury upon the issue rendered. On the same day the court on the chancery side thereof heard the case on the papers formerly read, the supplemental answer of defendant, general replication and verdict of jury, and decreed, that "the defendant, the said Bridge Company, do pay to the complainant, Mason, the sum of ten thousand dollars, the amount of said assessment by the said jury, with interest thereon from the date of the decree until paid, *and leave is given to the complainant to sue out execution upon this decree;* and it is further adjudged, ordered and decreed, that the complainant do receive of the defendant, the said Bridge Company, his costs by him in this court expended."

An appeal with *supersedeas* was granted to this decree.

The *first* exception was to the refusal of defendant's instruction to jury No. 2; the *second,* to the refusal of defendant's instruction No. 3, and substituted instruction given by the court; the *third,* to the refusal of defendant's instruction No. 5; the *fourth,* to the giving of plaintiff's instruction No. 1; the *fifth,* to giving the plaintiff's instruction No. 2; the *sixth,* to giving plaintiff's instructions Nos. 3, 4 and 5; the *seventh,* to the rejection of certain deeds as evidence; the *eighth,* to the refusal of the court to set aside the verdict and grant a new trial; the *ninth,* is embraced in former bills and is to the refusal of the court to grant for defendant instructions Nos. 2, 3 and 5, and, in lieu of No. 3, granting Nos. 3 and 3½.

Before we take up the several bills of exceptions, we will ascertain, what was decided in this cause, when it was before

us, as reported in 17 W. Va. 396. In the bill then filed Mason
alleged, that by authority of the county court he had estab-
lished a ferry across the Shenandoah river at Harper's Ferry,
and exhibited the order of the county court establishing said
ferry, which order after reciting all the jurisdictional facts
necessary and the fact, that the United States by attorney ap-
peared, as well as J. S. O. Donnell, who under the United
States claimed to have an interest, and reciting, what was
also necessary to give the court a right to establish said ferry,
·that it appeared, that "Mason owns the land on the east side
of the river at the place named, and has contracted for the
use of the land opposite, and that a ferry at said place is re-
quired for the convenience of the public, and that said grade
and road and street, are public roads, and that there is no
legally established ferry within half a mile of the proposed
ferry. Leave was granted to said Mason to establish a ferry
from the mouth of the Hillsboro grade and Pipertown road
or within fifty yards thereof to Tell street, Harper's Ferry, or
within twenty yards thereof, &c.

*The answer admits the order establishing the ferry* but denies,
that the ferry is established and operated at the place indi-
cated and described in the order, and calls for proof as to that
matter. *It admits that a ferry across the Shenandoah river is
conducted and controlled by plaintiff, and that the same is within
less than half a mile of the proposed bridge."* * * * *"It ad-
mits, that it has commenced the construction of the bridge and when
completed will operate it as a toll-bridge,"* &c.

Upon a full hearing of the cause the court in effect held,
that the ferry was legally established, that Mason owned the
ferry-seat on the east side of the river, and had contracted for
the use of the land on the other side of the river; that the
ferry-franchise was Mason's private property, that the de-
fendant *had no right* to damage said franchise without just
compensation to said Mason, and as it did not seem right to
arrest the bridge improvement, if a just compensation was
made to Mason, the court ordered that an issue *quantum dam-
nificatus* should be directed, to ascertain how much Mason's
ferry-franchise would be *damaged* by the erection and opera-
tion of the bridge. It was either necessary under our de-
cision to do this, and permit the improvement to be erected

and opened, when the damages so ascertained were paid, or to perpetuate the injunction. The court did continue the injunction to the construction and operation of the bridge, until said damages should be so ascertained and paid, and when paid, after being so ascertained, the injunction was to be wholly dissolved. All the questions, as to Mason's right to the franchise and his property thereon are *res judicata.* The decree of the Supreme Court of Appeals upon a question decided by the court below is final and irreversible; and upon a second appeal in the cause the questions decided upon the first appeal can not be reviewed. In such case the conclusiveness of the decree of the Supreme Court of Appeals is the same, whether the first appeal was from a final or interlocutory decree of the court below. When the Appellate Court makes a decree and sends the cause back for further proceedings therein, there can not be a bill of review to correct the decree of such Court for error apparent. By *error apparent* is meant such, as appears upon the face of the proceedings; and that includes all that was in the issue.

When the Supreme Court of Appeals has executed its power in a cause before it, and its final decree or judgment requires some further act to be done, it will send its decree or judgment to the court below to be executed. Whatever was before the Court and disposed of is considered finally settled. The inferior court is bound by the decree or judgment as the law of the case and must carry it into execution. The court cannot examine it for any other purpose than to execute it, nor give further relief. *Henry* v. *Davis*, 13 W. Va. 230. This cause was remanded to the court below for one purporse, to ascertain in the manner prescribed by our mandate the damage, which the construction and operation of the said bridge would inflict upon the plaintiff's ferry-franchise. If his rights in the franchise remained the same, as when the decree of the circuit court, from which the appeal was taken, was rendered, there could be no evidence offered upon trial of said issue in any way affecting said rights.

With these principles settled we will proceed to examine the exceptions taken to the rulings of the court on the issue. The first was to the refusal to give defendant's second instruction. The instruction is as follows: "The court instructs the jury,

that if they believe from the evidence, that the ferry of the plaintiff was landed at the time of the opening of the bridge of the defendant and thereafter until the discontinuance of the operation of said ferry (if from the evidence they find the said ferry was so discontinued) upon landings upon the property of the United States Government, then said ferry during such time was illegally conducted, and the plaintiff is not entitled to recover damages to his ferry-franchise on account of loss of revenue by the opening of said bridge to travel, unless they further find from the evidence, that during such times permission was given to use such landings by the United States Government or its assignees."

In *White* v. *South Shore Railroad Co.*, 6 Cush. 412, it appeared, that by a special act of the Legislature Hobart was authorized to erect a mill-dam across Monatiquot river. A dam was accordingly constructed and a pond raised; and the petitioners having become the proprietors and being in possession of the premises and privileges seek to recover damages from the respondents, among other things for the injury done to their mill-pond, and privileges by constructing an embankment through and across the pond. At the trial evidence was offered, tending to show, that the dam constructed under the act of the Legislature was not constructed in conformity with the provisions of the act, and the sheriff was requested to instruct the jury, that if they were satisfied, that the dam was not built in the manner specified in the act, they should allow nothing for damages to the pond. The sheriff declined to so instruct the jury; but the court of common pleas set aside the verdict rendered under this ruling, on the ground that the petitioner acquired no rights to the pond, because the dam had not been constructed in conformity with the act of the Legislature. Fletcher, J., said: "The ground assumed by the respondents, and upon which the verdict was set aside, is in effect, that petitioner has forfeited all right to this dam, because it was not built according to the provisions of the act. But surely the respondents can have no right to take the petitioners' pond from them, because the dam was not constructed according to the act. Whether or not the provisions of the act have been complied with, is a matter between the petitioners and the government."

That is a stronger case than this; for here in this instruction it is not intimated, that the plaintiff's franchise is not legal, but that in landing he was a trespasser by landing on the property of the United States instead of his own. If that were true, it was a matter between Mason and the United States, with which the defendant had nothing to do. The instruction was properly refused.

The second bill of exceptions was to the refusal to give defendants instructions No. 3 and substituting therefor two other instructions. No. 3 reads: "In estimating damages to the plaintiff's franchise the jury will not consider such revenues, as were derived from the ferry run upon the landings of the government of the United States, but only such revenues, as could in their judgment from the evidence before them, have been derived from the ferry conducted upon such landings (exclusive of the United States landing), as are prescribed in the order of the county court granting the said franchise to the plaintiff." This instruction was refused and properly so for the same reasons, that justified the court in refusing defendant's second instruction.

The court gave in lieu of such instruction the following: "The court instructs the jury, that if they find from the evidence, that since the rendering of the decree in this cause, which was appealed from, the defendants have become the owners of the land, on which the ferry of the plaintiff landed, on the west side of the river, and that the receipts proved in this cause to have been received from the government-ferry was received by the government or its assignees, when said ferry was landed on said ferry-lot owned by the defendant, then in estimating the damage to the plaintiff's franchise by the construction and opening of the toll-bridge of the defendant, the jury will not consider such revenues, as were derived from the ferry run upon the government-landing as the measure of damage to the plaintiff's franchise, unless they find from the evidence, that had the landing of the plaintiff's ferry been at the foot of Tell street or south of said street upon the property of the plaintiff, the same would have been received in the exercise of said franchise at either of the points last named." This amounts to saying, that if the plaintiff landed on other landings than these named in the

order establishing the ferry, the reasons thus obtained are not to measure the damages, unless the jury should believe, that the same revenues would have been received, had the landings been within the limits named in the order of the county court. In other words, the value of his franchise was to be determined by the amount of persons and things that sought a crossing at his ferry, and unless the same travel would have been drawn to the ferry, if he had landed at the foot of Tell street or within twenty yards thereof, as were drawn while he was landing on the "government-land," the jury would not consider the revenues received, while landing on the "government-landing" in estimating the damage done to the franchise.

This instruction clearly did not prejudice the defendant and it has no right to complain of it.

The second substituted instruction is: "The court further instructs the jury, that in forming their judgment of the damage to the said franchise of the plaintiff, when run within the limits authorized by the county court of Jefferson, and from landing which the plaintiff has the legal right to use, they are at liberty to consider such revenues mentioned in instruction No. 3 (the foregoing instruction) as evidence tending to show the amount of travel seeking passage across the river at that point, and the value of such travel to one holding the exclusive privilege to charge for transporting the same over the river by means of a ferry located as provided in the order of the county court (exclusive of the landing on property north of Tell street); and on the other hand they are at liberty to consider the peculiar risk, disadvantages and inconveniences to the public, if any, from the location of the landings within the limits of the order of county court (exclusive of the government-landing) as tending to affect or diminish the said travel, or the value of the same, to the said ferry-franchise so located."

It seems to me this instruction is fair to both sides and propounds the law correctly. If the plaintiff in the exercise of his franchise landed on ground, for the use of which he had not contracted, which was better than his own, while the jury might consider the travel, while he landed on the good landings, to show the extent thereof, yet they might also

consider in estimating the damage to the franchise the fact, that there might not be so much travel attracted to the ferry if he landed within the limits prescribed in the order establishing the ferry. In *Columbia Delaware Bridge Co.* v. *Geisse*, 38 N. J. L. 39, the jury was instructed to take into consideration in estimating the value of the ferry franchise the difficulty and uncertainty of making arrangements with the ferry-owner on the Pennsylvania shore, which instruction was approved by the supreme court.

The *third* bill of exceptions is to the refusal to give defendant's instruction No. 5, which reads: "The jury are instructed, that in assessing damages to the franchise of the plaintiff, he is required to show affirmatively his ownership, or contract for the use of the property damaged, as of the present time, and the order of the county court is not of itself to be regarded in the said assessment, so far as title to the landings of the ferry is concerned." This instruction is clearly wrong and was properly refused. It instructs the jury, that "the plaintiff is required to show affirmatively his ownership or contract for the use of the property damaged as of the present time." That property so *damaged* is his ferry-franchise, his right or title to which was settled by this Court on the former appeal. As to the landings this Court on the former appeal decided his right thereto, as they then existed; and it was not necessary to introduce the record of the county court to show, that at that time he was entitled to their use, for that question had been settled.

The *fourth* exception is to the giving of plaintiff's instruction No. 1, which instruction is as follows: "The court instructs the jury, that if they find from the evidence, that the plaintiff, Mason, has been authorized by the county court of Jefferson, to establish a ferry from the mouth of the Hillsboro grade and Pipertown road, or within fifty yards thereof, upon his own land or upon land contracted for, to Tell street, Harper's Ferry, or within twenty yards thereof, that said roads and streets are public highways, and the grant from the county court operates to confer upon the plaintiff the right to land his boat and take passengers from the foot of Tell street without showing to the jury, that he first obtained the consent of the authorities of Harper's Ferry."

On the former appeal we held, that that franchise, granted indirectly by the State through instrumentalities provided by general laws for such purposes, are the same in effect, as if the power conferring such franchise and rights had been exercised directly by the State itself. In that case it was held, that the said ferry was legally established, and the county court ascertained and declared, that said road and said street were public roads. We cannot see how the right to land at Tell street could be questioned in the trial of the issue. Even if it could, the instruction is correct in the principle announced, for the same authority, that directly gave Harper's Ferry power over her streets, indirectly gave Mason through the county court the right to land his ferryboats at the foot of Tell street, unless it had deprived itself of that right, in its former grant to Harper's Ferry. The charter granted Harper's Ferry by the Legislature is made a part of the bill of exceptions. In that charter is this clause: "Any matter, for the doing which a license is required by the laws of the State, shall not be done in this corporation, unless under authority of a license obtained from the corporation for doing the same, under a penalty of twice the amount, which may be demanded by the corporation for the issue of such license." It is quite evident, that this does not refer to the right to land a ferry-boat at the foot of one of the public streets, but refers to a license to do a thing, for the doing of which the corporation may issue a license, and money may be charged therefor.

But it is insisted by counsel for appellant, that the county court was prohibited from allowing the ferry to be landed at the foot of Tell street, § 33 of ch. 43 of the Code of West Virginia. That section provides: "Not more than two acres of land shall be condemned for any landing. And no road or landing shall be established by the supervisors of a county, upon or through any *lot* in an incorporated village, town or city without the consent of the council thereof." This section clearly does not prohibit the county court from granting the right to land ferry-boats at the foot of a public street, in an incorporated village, town or city.

The sixth exception is to the giving of plaintiff's instructions Nos. 3, 4 and 5. No. 3 is in these words:

"Although the jury may find from the evidence that at the foot of Tell street the condition of the river and the bank is not at present suitable for a safe and convenient passage and landing for the ferry of plaintiff, and although they may further find that since the rendition of the decree in this case, which was appealed from, the defendant has become the owner of the twenty yards of river bank north of Tell street, yet if they find from the evidence that said street or within twenty yards south can be made a safe and convenient landing by the expenditure of a certain amount of money, they must find for the plaintiff such damages as they may ascertain his ferry-franchise has sustained by reason of the erection and use by the public of the bridge of defendant, to be credited by the amount of the cost of making said river and banks safe and convenient for the use of the ferry."

This instruction propounds the law correctly. The jury were assessing the damage to the plaintiff's ferry-franchise, which gave him the exclusive privilege within a half mile of his ferry of transporting persons, &c., over the river for toll. If his landings were not good, and he could make them so, then his quantum of damages ought only to be lessened to the extent of the cost necessary to make the landings good. The damage inflicted upon him by the construction and operation of the bridge was to his franchise and not to his landings.

*Columbia Delaware Bridge Co.* v. *Geisse,* 38 N. J. L. 39.

Exceptions Nos. 4 and 5, are as follows:

### No. 4.

"And that although they may find from the evidence that at the mouth of the Hillsboro grade and Pipertown road the condition of the river and the bank is not at present suitable for a safe and convenient landing for the ferry of plaintiff, yet if they further find that said place, or within fifty yards thereof, and upon land owned or contracted for by the plaintiff can be made a safe and convenient landing by the expenditure of a certain amount of money, they must find for the plaintiff such damages as they may ascertain his ferry-franchise has sustained by reason of the erection and use by the public of the bridge of the defendant, to be credited by

the cost of rendering said river and banks convenient and safe for the use of the ferry."

No. 5.

"If the jury believe from the evidence that the plaintiff has established a ferry over the Shenandoah river at the points and between the limits prescribed in the order of the county court of Jefferson granting license to said plaintiff to establish such ferry, and that said plaintiff owns or has contracted for the use of landings on both sides of the river within the limits prescribed in said order of the county court, then, even if they find that said plaintiff may have to expend further sums to make a proper channel for his boat across the river and suitable landings for his ferry boats on either side of the river on said land so owned or contracted for by him, they will only deduct such necessary expenditures from the amount assessed as damages to plaintiff's franchise by the erection and opening of defendant's bridge."

For the reasons above stated as to instruction No. 3, we think that these two instructions propound the law correctly, and were properly given.

The seventh exception was to the exclusion of two deeds, one from a commissioner of the district court of the United States for the district of West Virginia to J. Cavilier, and the other from said Cavilier and wife to the defendant. The court rejected said deeds as evidence as tending to show title to a tract of sixty-eight and one-half acres on the east side of the Shenandoah, because of the vagueness and uncertainty of the description of the said tract of land refered to in said decrees of the district court, and because said decrees did not identify the land described in the deeds. This it seems to me was reason enough for excluding the deeds as evidence of title, as the bill is referred to in the decree and is not produced, and the decrees certainly do not identify the land described in the deeds. *Cales* v. *Miller*, 8 Gratt. 6; *Masters* v. *Varner*, 5 Gratt. 168; *Walton* v. *Hale*, 9 Gratt 194. But there is another reason, why the deeds should have been rejected as evidence as to the title of the sixty-eight and one-half acres. The bill of exceptions does not show, that the evidence was relevant to the issue; and we are unable to see its relevancy. If it was sought to prove, that at the time, when the decree

was rendered in the original cause, which was appealed from, Mason did not have a ferry-seat on the east side of the river, it was clearly irrelevant and improper, as that question is *res judicata*. It is not claimed, that since the said decree he has shifted the ferry-seat to the land of another. The deeds for the purpose of showing title to the sixty-eight and one-half acres of land were properly rejected.

Exception No. 5 is to the giving of plaintiff's instruction No. 2, which is as follows: "And they are further instructed, that should they find, that Mason owns or has contracted for the use of the land on either side of the river within the limits prescribed by the landings of said ferry, that this meets the requirements of the law, and they must find for the plaintiff such damage as he has or may sustain by the erection and operation of said bridge." Judge Faulkner, who presided at the trial, appends a note to this bill of exceptions of which he is entitled to the benefit. It is as follows: "This instruction was not objected to, when offered, and therefore was not examined by the court, but when the instructions were granted the following morning, the defendant excepted to all the instructions including No. 2 given by the court on behalf of the plaintiff." There is no doubt, that this instruction means, that if Mason owns or has contracted for landings for the ferry on one side or the other of the river, this meets the requirements of the law. This would do away with the necessity of a ferry-seat. This instruction does not propound a correct legal proposition.

But, does this erroneous instruction prejudice the defendant? Judge Faulkner so tersely and well states the law involved in this question, that I quote, approve, and adopt his language. "I assume this instruction must be construed to mean, if the jury are satisfied, that Mason owns or has contracted for the use of the land on the east or on the west bank, within the limits prescribed for the landings of said ferry that he has complied with the requirements of the law, and has established a legal ferry, whereas in fact, to entitle Mason to recover, the jury must have been satisfied, that Mason owned or had contracted for the use of the land on the *east* bank at this point, which was the *seat of his ferry*. The ownership or right to use land on the west side was not nec-

essary to constitute it a legal ferry.   The failure of his right
to use the west bank would go alone to the *value* of the fran-
chise.   *   *   *   Hence giving the instruction the meaning
contended for by the defendant's counsel, it declared the
law incorrectly, and a new trial should be granted, unless the
court upon an examination of the record and evidence is
clearly of opinion, that the defendant could not possibly have
been prejudiced by the erroneous instruction.   1 Gra. &
Wat. on New Trial 261–2.   But an erroneous instruction is
no ground for a new trial, if the verdict is correct under the
law and the facts.   '*Armstrong* v.  *Keith* 20, Am. Dec. 134.'
Again, 'although the charge is wrong, still if it does not con-
trol the jury, but they find contrary to it, and their finding is
correct, it is not a ground for a new trial.'  *Ib.*   'A new trial
will not be granted for a wrong instruction, provided the
court can clearly see, that the error could not have influenced
the verdict.'   3 Gillmore 202.   In *Clay* v. *Robinson* 7 W. Va.
348, Judge Haymond says :   'Where an instruction given at
the instance of the plaintiff, which does not correctly pro-
pound the law, but it is manifest from the record, that the
defendant could not thereby have been prejudiced or injured,
the appellate court will not reverse the judgment on account
of such erroneous instruction.'   'An instruction, which upon
the statement of the evidence could not have injured the ex-
ceptor is no ground for reversing the judgment.'  *Beaty* v.
*B. & O. R. Co.*, 6 W. Va. 388.   *Danville Bank* v. *Waddill*, 27
Gratt. 448.  *Binns* v. *Waddill*, 32 Gratt. 592.  'A misdirection is
always a ground for reversal, unless it can be plainly seen,
that the error could not have affected the jury ; on the other
hand the converse of the proposition is equally true, that if
the appellate court is satisfied, that the jury could not have
been influenced by the misdirection, it will not merely be-
cause of such misdirection, reverse the judgment.'

"The case of *Dinges* v. *Branson*, 14 W. Va. 100, belongs to a
class of cases in entire harmony with those cited.   The record
then before the Appellate Court did not show that the in-
structions if erroneous could have affected the verdict; and
the rule is the judgment will be reversed unless it affirma-
tively and clearly appears, that the erroneous instruction
could not have misled the jury; the failure of showing, that

the exception could not have been prejudicial, rests upon the party, at whose instance the erroneous instruction is granted. * * This instruction does not refer to the value of the franchise; it announces no principle upon which the measure of damages were to be ascertained. The jury therefore could not have been mislead in considering the damages. The purpose of this instruction was to declare, what under the statute constituted a legal ferry. If therefore under the law and the evidence before the jury, there cannot be any question about Mason's title to the ferry-seat, then no injury could have resulted from this instruction."

The learned judge then proceeds to review the evidence and show under the rule above laid down, that no injury resulted to the Bridge Company by this instruction. Much evidence was introduced before the judge without objection, that was wholly irrelevant to the issue. The plaintiff in the issue seemed content to fight over again questions which had been definitely settled by the Appellate Court on the former appeal. If any one question was so settled on the former appeal, it was, that Mason had the right to the ferry-seat and had a legally established ferry. That should have been assumed to be true on the trial of this issue. There was no evidence before the jury tending to show, that since the rendition of the former decree appealed from Mason had lost his right to the ferry-seat. The instruction could not therefore have prejudiced the defendant in the issue.

But it is claimed, that the instruction was inconsistent with another instruction given. If this is true, it was error to give it; but for the foregoing reasons it was not an error, for which the judgment would be reversed, as it clearly appears from the record, that the defendant was not prejudiced by it.

Exception No. 9 was to the refusal of the court to grant deefndant's instructions Nos. 2, 3 and 5, and to the granting in lieu of No. 3, instructions Nos. 3 and 3½. This exception has already been disposed of in considering exceptions Nos. 1, 2 and 3.

The only remaining exception to be considered is exception No. 8, to the judgment of the court in refusing to set aside the verdict and grant a new trial. There are six grounds stated for setting aside the verdict, as follows: "It

was contrary to the evidence;" "It was against the weight of the evidence;" "The court misdirects the jury as to the law;" "The verdict was against law;" "The verdict was excessive;" "The verdict was against the instructions of the court."

In considering these questions we agree, that the rule of damages to be applied is the same as in condemnation cases. But this being under the peculiar circumstances of this case an issue *quantum damnificaatus*, in considering the question, as to whether the verdict was justified by the evidence, the same rule must be applied as is applied to verdicts on issues out of chancery and issues *devisavit vel non*. That rule is, that where the bill of exceptions certifies the evidence and not the facts proven on the trial, the Appellate Court will not reverse the decree and grant a new trial of the issue, unless by rejecting all the parol evidence of the exceptor in conflict with the evidence of the other party, and giving full faith and credit to that of the adverse party the decree of the court in over-ruling the motion for a new trial still appears to be wrong. *Nease* v. *Capehart*, 15 W. Va. 299; *Webb* v. *Dye*, 18 W. Va. Applying this rule to the case at bar we cannot say, that the verdict was contrary to the evidence. It clearly appeared, that Mason had rented his ferry for a year for eight hundred dollars, and that the opening of the bridge would render his ferry worthless. If before the bridge was constructed his ferry-franchise was worth eight hundred dollars per annum or even considerably less, and after the opening of the bridge the travel would all go to the bridge and none to the ferry, so that his franchise would be worthless, then we should unhesitatingly say, that the verdict was justified by the evidence, and the amount of damages was not excessive.

The alleged misdirection of the court, we have already considered.

We do not think the verdict was contrary to the instructions of the court.

But it is insisted by counsel for appellant, that the jury applied an improper rule for their finding; that their damages were speculative; that they evidently regarded Mason's ferry-franchise as permanent, whereas the Legislature might destroy it at its next session, and the rate of tolls might be

lowered, &c. It is true in a case like this the damages
should not be speculative but real. *Chicago & Pacific R. Co.*
v. *Francis*, 70 Ill. 238. It is not claimed in the argument on
this point, that at present the damages are not substantial
and real, but that the jury should have taken into considera-
tion the fact, that the franchise in the future might be taken
away by the Legislature, and that the rate of tolls might be
changed. Not a single authority has been cited, where such
contingencies were taken into consideration in estimating
the damage done by competition to a franchise. In *Colum-
bia Delaware Bridge Co.* v. *Geisse*, 38 N. J. Law. 39, which is
a case very similar to this no question, as to what the Legis-
lature might in the future do, was raised. But objection was
made to testimony of rates of toll, which had been estab-
lished before the grant to Geisse, and the court says: "If
the rates established by the board, before the act of 1856 was
passed, are not such a prescribing of tolls, as is contemplated
by that act, it would make no difference in this action. The
suit is not brought for tolls earned, but for the recovery of
compensation for the franchise of a ferry. If the board of
chosen freeholders had not fixed any rates, the franchise
would be in existence, and the owner might have had the
rates fixed by the freeholders at any time. The value of the
evidence, was only in showing, what the public authorities
having power from time to time, to establish rates of ferri-
age considered as reasonable tolls at this ferry."

It seems to me, that unless we act upon the presumption,
that the franchise will continue to exist, we have positively
no rule, by which the damages could be measured at all.
Grants of franchises are constantly, being made to railroad
corporations with a clause reserving the right to amend or
repeal the grant. Suppose, another corporation in the exer-
cise of the right of eminent domain should seek to condemn
a part of the property of such corporations in estimating the
damages should the court or jury take into consideration the
possibility of the repeal by the Legislature of the charter? I
think not. It is presumed, that that which exists, will con-
tinue. I see no reason for setting aside the verdict.

Did the court err in the decree it entered? Counsel for
appellant insist, that the court had no right to order an exe-

cution on said decree. It ought not to have rendered a personal decree. In this the court erred. The mandate of the Appellate Court should have been followed; and that certainly does not authorize such a decree. It would have been better in the mandate in the former cause to have omitted the words, "the said circuit court shall decree the same to be paid to the plaintiff." When we take into consideration the character of the case, the object to be obtained by the injunction and the opinion of the court, it is clear, that it was not the intention to enter a personal decree in the cause for the damages. This clearly appears from the words of the mandate, which declare: "and until the *damages* so ascertained and decreed be paid to the plaintiff, the said circuit court shall continue the injunction aforesaid, as modified by this court, in full force and effect; but when said *damages* are fully paid to the plaintiff, the said injunction is to be wholly dissolved." Execution should have issued for the *costs* but not for the *damages.* If the Bridge Company choose it can entirely abandon the bridge, and in such case it will not be required to pay the damages. Mason was not permitted to compel it to pay the amount ascertained by the verdict. He enjoined it from *damaging* his ferry-franchise by the construction and operation of the bridge, until compensation was made; but after it is ascertained by the verdict of a jury, what it shall have to pay before it can use the bridge, one of two courses is open to it: to pay the money and let the injunction be dissolved; or to refuse to pay it and not use the bridge or permit it to be used by the public.

The decree of the circuit court of Jefferson county is reversed at the cost of J. M. Mason, the appellee; and this court proceeding to render such decree upon the verdict of said jury, as the circuit should have rendered, it is ordered, that when the appellant, the Harper's Ferry Bridge Company, pays to the appellee, J. M. Mason, the sum of ten thousand dollars, the amount ascertained by the jury as damages to said ferry-franchise by the construction and operation of the bridge of appellant, the said injunction shall be wholly dissolved; but until said sum of ten thousand dollars damages so ascertained as aforesaid is so paid to the said J. M. Mason, the injunction heretofore awarded in this suit enjoining and re-

straining the said defendant, the Harper's Ferry Bridge Company, from constructing and operating said bridge is continued in full force and effect. And it is further ordered, that the said defendant shall pay to said J. M. Mason his costs about the prosecution of his suit in the county and circuit courts expended, and execution may issue upon this decree for said costs.

JUDGES HAYMOND AND GREEN CONCURRED.

DECREE REVERSED.