## CHARLESTON.

COUCH v. EASTHAM *et al.*

Submitted January 25, 1886.—Decided March 27, 1886.

1. Equity has jurisdiction of an issue *devisavit vel non* to set aside a will, on the ground that it was executed by mistake and therefore is not the true will of the testator. (p. 799.)

2. Upon the trial of an issue *devisavit vel non* to set aside a will for mistake in the testator in executing it, declarations of the testator made *before* and *after* the execution of the will are inadmissible to prove the mistake. (p. 804.)

3. The *mistake* which will avail to set aside a will is the mistake as to what it contains, or in regard to the paper itself, not a mistake either of law or fact in the mind of the testator as to the effect of what he actually and intentionally did. (p. 805.)

4. When a final decree is pronounced in favor of a will on the verdict of a jury rendered on an issue *devisavit vel non*, the functions of the suit are exhausted, and the bill should be dismissed. In such suit the construction of the will is not involved. (p. 806.)

*Knight & Couch* for appellant.

*J. W. English* and *J. B. Menager* for appellee.

JOHNSON, PRESIDENT:

Samuel Couch of Mason county made his last will and testament on May 15, 1879. The first clause of the will is as follows: "I give and devise unto my son Peter S. Couch my farm on which I reside in Mason county, West Virginia, containing about 950 acres; but it being my desire to devise the property as nearly equally as may be between my two children, Peter S. Couch and Sarah Frances Eastham, I direct my said son, Peter S. Couch, to pay his sister, Sarah F. Eastham, the sum of $4,000.00, and I hereby make the said sum of $4,000.00, a lien and charge upon the real estate aforesaid, devised to Peter S. Couch, until the same is paid to said Sarah F. Eastham or her heirs; but in the event that said Peter S. Couch shall die leaving no lawful children surviving him, it is my will and desire that the title to all my real estate aforesaid shall pass to and be vested in my daugh-

ter, Sarah Frances Eastham, or her children, if she be not then living, upon the payment by her, or her said children, to said Mary Catharine Couch of the sum of $4,000.00 ; but in the event that said Mary Catharine Couch shall not then be living, it is my will and desire that said real estate shall pass to and vest in my said daughter, Sarah F. Eastham, or in case of her death to her children without the payment of anything in consideration therefor."

. By the second clause he gave to his daughter all his personal property with some few exceptions, which he disposed of to others.

On September 8, 1880, he executed a codicil to said will, in which he says: "It is my will and desire that the first clause of my said will be and the same is hereby so changed as to read: 'that in the event the said Peter S. Couch shall die leaving no lawful children surviving him, but leave his wife, Mary Catharine Couch, surviving him, it is my will and desire that the title to all my real estate aforesaid, shall pass to and be vested in my daughter, Sarah Frances Eastham, or her children if she be not living, upon the payment by her, or her said children to said Mary Catharine Couch, of the sum of $2,000.00 instead of $4,000.00, as in said will is provided, and it is my wish and desire, and I hereby request my son, Peter S. Couch, to use the timber upon the real estate devised to him, only for the purposes of the farm, and I do earnestly request that none of said timber shall be sold by him, or be sawed into lumber for the purpose of selling as merchandise.' "

Samuel Couch died in March, 1884, and his will and codicil were duly admitted to probate.

At August rules, 1884, Peter S. Couch brought his suit in equity to set aside said will, on the ground that it is not the true last will and testament of Samuel Couch, because it was executed in mistake and does not contain the intentions of the testator; that said will shows on its face that it was the intention of the testator to divide his property equally between his children, and the will shows in its bequests manifest inequality. The bill also alleges, that Samuel Couch many times had said, before the will was executed, that he intended to make his children equal in the disposition of his property,

and many times after the execution of the will said that he had made them equal by his will; that he valued his farm at $25.000.00 and his personal property at $17,000.00, and intended to give his farm to Peter and the personal property to Sarah, and to charge the farm with $4,000.00 in favor of Sarah, thus giving them $21,000.00 each in property. The bill charges, that Peter's life-estate is not worth $4,000.00, and that his father intended to give him the fee simple in the farm and not a life-estate. The bill prayed for an issue *devisavit vel non*, and that on the verdict of the jury a decree be entered declaring the said paper-writing not the last will of Samuel Couch deceased, and for partition of his estate between complainant and his sister equally.

The defendant, Sarah F. Eastham, answered the bill, denying that there was any mistake made by her father in the execution of his will.

On September 10, 1884, the court directed an issue *devisavit vel non*, which was tried in February, 1885, and the jury found that the said paper-writing and every part thereof was the true last will and testament of Samuel Couch, deceased. Thereupon Peter S. Couch by counsel moved the court to set aside the verdict, and to grant him a new trial, which motion the court overruled, and the plaintiff excepted.

The first bill of exceptions contains the will and codicil, the probate, the refusal of the executors named in the will to qualify, and the appointment of an administrator, and the depositions of a number of witnesses, who testified mainly to declarations of the testator made *before* and *after* the execution of the will, that he intended Peter S. Couch to have the farm, and that he intended to make and had made his two children equal in the disposition of his property, and the objection of the defendants " to so much of each and all of said depositions as tended to prove the declarations of the testator made by him before and after the date of the execution of the said alleged will and codicil, on the ground that it was not competent to impeach said will by the parol declarations of the testator so made;" and the refusal of the court to permit said declarations to be read to the jury, and the exception of the plaintiff to said action of the court.

The second bill of exceptions contains the proof of the

mental capacity of the petitioner by the attesting witnesses, the will and codicil, the probate thereof, the refusal of the executor to qualify and the appointment of an administrator, the proof by the plaintiff that at the time of Samuel Couch's death his personal estate was worth about $12,000.00, that the rental value of the home-place devised to Peter S. Couch was about $700.00 or $800.00 per annum, the landlord paying the taxes, which were about $300.00 per annum, and the proof that the value of the land was about $17,000.00 or $18,000.00.

The court certifies that these were all the material facts before the jury on the issue.

On February 19, 1885, the cause was heard on the pleadings and the verdict of the jury; and the court dismissed the plaintiff's bill with costs, from which decree the plaintiff appealed.

It is insisted by appellant's counsel, that the court erred in rejecting the evidence of the declarations of the testator. He admits that in any suit for the construction of a will parol evidence to explain, vary or contradict the will is inadmissible.    This is a proper *concession*, as the authorities are uniform in support of it and are too numerous to cite.    But it is contended, that when the contest is as to the execution of a will, whether there was in fact a will of the testator executed, then a different rule applies, and any parol evidence on such an issue, including the declarations of the testator both before and after the execution of the will, is admissible. Upon the investigation of this question we will refer only to authorities in cases, where the question was, whether any will had been in fact executed.

It is not controverted in this cause, that upon an issue *devisavit vel non* the will of a testator or a part thereof may be declared void, for the reason that it was executed by a mistake of the testator.    The mere fact, that a paper has been executed with all due formality, does not necessarily constitute it the will of the person so executing it, or preclude the admission of parol evidence; that it was so executed by mistake and under a misapprehension.    (1 Red. on Wills 205.) The question, we are now considering, is:    Upon an issue of " will or no will " can the declarations of the testator made

before and after the execution, so far removed therefrom as
to form no part of the *res gestæ*, be admitted to prove, that
the will was executed by mistake ?

*Provis* v. *Reid*, 5 Bing. 435, was a writ of entry *sur* abate-
ment. The demandants claimed as heirs of Henry Sara;
the defendant claimed under the will of Sara. The demand-
ants proposed to show that the will was executed in the pres-
ence of only two attesting witnesses, and that the name of a
third was added after the death of the testator. The de-
mandants prepared to give evidence of the following among
other declarations made by the testator as to the will : "Tom
Reid (the defendant) has been trying to get my property, but
neither he nor his shall have it. Scott drew up a paper, and
they got me to sign it ; but never fear, I know that it is not
worth to Reid one farthing." " My land goes to my own
family. Peggy (one of the defendants) remember the land
is yours. If I don't live to make my will, when I'm dead
see that you are righted." The judge rejected the evidence.
Best, C. J. said : " It has been insisted, that declarations of
the testator were admissable in evidence to show, that the
will he had executed was not valid; but no case has been
cited in support of such a position ; and we shall not for the
first time establish a doctrine, which would render useless
the precaution of making a will; for if such evidence were
admissable some witness would constantly be brought for-
ward to set aside the most solemn instruments." Park, J.
in the same case, said : " When the legislature has taken
such care to prevent frauds in wills, and when it is consid-
ered how easily declarations may be extorted by artful per-
sons, after the intellect of the testator has been impaired by
time, it would be most mischievous, and a violation of all
established principles to allow such declarations to be re-
ceived in evidence."

*Jackson* v. *Kniffen*, 2 Johns. 31, was on ejectment. The
lessees of the plaintiff claimed as heirs at law of David Knif-
fen, and the defendant under the will of said David. The
plaintiff offered to prove by one of the subscribing witnesses
to the will and by four other persons, that the testator on
many occasions in conversation with them, whom he con-
sidered to be his friends, since the making of the will had

uniformly and in the most earnest manner declared the instrument not to be his will; and that he was forced to execute it for fear he should have been murdered, if he did not; and that he called on these persons to bear witness to what he declared, and particularly requested the subscribing witnesses not to prove the execution of the will.    The plaintiff also offered to prove, that˟ the testator on his death-bed and within an hour before his death, while expecting immediate dissolution, in a solemn manner called on one of the persons then present to bear witness, that the said instrument was not his will, but that it had been extorted from him through fear of being murdered, and that his desire was to make an equal distribution of his estate among his children.    The judge ruled out the testimony; and the plaintiff submitted to a non-suit.    A motion was made to set aside the non-suit and for a new trial on a case made, in which the above facts were stated.    Thompson, judge, said:

"In whatever point of view the testimony offered is considered, I can not but think, that it was properly overruled. It could not if placed in the strongest possible terms, amount to a revocation without a direct violation of the statute, which declares, that no will (of land) shall be revoked or altered, except by writing, executed with all the requisites of a will, or by cancelling the same.    If these declarations were not to operate as a revocation, I am at a loss to see in what manner they could affect the will.    To say they were proper, in order to show that the instrument in question was not duly executed by reason of its having been signed under *duress*, is assuming the very point which was to be proved. If they were legal evidence, they must be so, when standing alone, unaided by an any of the circumstances previously proved.   *   *   This will might have been executed under circumstances which ought to invalidate it; but to allow it to be impeached, by the parol declarations of the testator himself, would in my judgment be eluding the statute, and an infringement upon well settled and established principles of law."

Kent, chief justice concurred, and also Livingston, judge, who said:

"Besides the danger of tampering with a person, who may

be known to have made his will, of fraud in making use of some loose and unguarded expression to set it aside, and of perjury in fabricating declarations which may never have been made, and thus revoking a will by parol, the right of cross-examining is inviolable and not to be broken in upon."

Spencer and Tompkins, J. J., dissented.

In *Waterman* v. *Whitney*, 11 N. Y. 157, the surrogate of Broome county made an order refusing to admit the will of Whitney to probate. An appeal from the order was taken. Issues were directed to ascertain whether the paper-writing offered for probate and refused was the will of Whitney. The questions of testamentary capacity and undue influence were involved. Evidence was offered, that the testator had stated to a witness, after he had made the will, how he had disposed of his property, which was entirely different from the disposition of it by the will. The evidence was objected to, and the objection sustained. Selden, J., delivered the opinion of the court, which held, that where a will is disputed on the ground of fraud, duress, imposition or other like cause not drawing in question the testator's mental capacity at the time of its execution, neither his prior nor his subsequent declarations are evidence; but on the question of his capacity his declarations before and after the execution of the will are admissible.

*Comstock* v. *Hadlyme*, 8 Conn. 254 was an appeal from a decree of probate establishing a will; and it was held, that the declarations of the testratrix, tending to show importunity and undue influence, made about the time of executing the will were admissible only to show the testatrix's state of mind, not to prove the facts stated.

*Moritz* v. *Brough*, 16 Serg. & R. 403, was a feigned issue directed by the register's court to try the validity of a writing purporting to be the will of Peter Moritz. The question of the admissibility of the declarations of the testator arose, and the supreme court held, that to set aside a will duly executed by a man of competent understanding, evidence is not admissible of declarations made by him, that he intended differently and was importuned by his wife to make the will.

*Norris* v. *Sheppard*, 20 Pa. St. 475, was an issue *devisavit vel non;* and the court held, that a will duly made by one of

sound mind and memory can not be defeated by proof of declarations of the testator made before the will was executed, that he intended to dispose of his property in a different manner.

*Boylan* v. *Meeker*, 4 Dutch. 274, was an action of ejectment, in which the validity of a will was in issue. It was decided in that case, that, where the execution of a will is proved in the mode required by law, the declarations of the testator made before or after the execution of the instruments are not competent to prove fraud, duress or forgery, or to disprove the execution of the will; they are rejected upon the principle, that they are hearsay and not under the sanction of an oath; but declarations made at the time the instrument is executed are admissible as a part of the *res gestæ*.

*Gibson* v. *Gibson*, 24 Mo. 227, was a contest as to the validity of a will; and it was held, that, where it is sought to invalidate a will, on the ground that the alleged testator was under undue influence and was at the time of signing the will of unsound mind by reason of intoxication, declarations made by him to the effect, that he had never made the will, that if he had signed it, they had got him drunk and made him do it, for he had no recollection of it, are inadmissable in evidence.

This Court had occasion to examine this subject in *Dinges* v. *Branson*, 14 W. Va. 100; and we then held, that the declarations of a testator or grantor made either before or after the execution of the instrument are admissable evidence, where the issue involves the mental capacity of the testator or grantor or undue influence exerted upon him at the time the instrument was executed. After an examination of numerous authorities, referring to nearly all I have here cited, the Court in its opinion says: " All the authorities agree with Judge Washington (in *Stevens* v. *VanCleve*, 4 Wash. C. C. 262) that such evidence is inadmissable *either* to control the construction of the instrument or to support or destroy its validity. The only ground upon which such declarations are held admissable is to throw light upon the mental capacity of the testator or of undue influence exerted upon him to procure the execution of the will." While the question here presented was not involved in that case, yet it was impossible

not to recognize the fact, that the authorities never permitted such declarations to go in evidence to prove the truth of such declarations or to affect the validity of the will, except so far as they might show or tend to show, that the testator was mentally incompetent to make it.

If such declarations could be admitted to prove, that the will was procured by fraud or duress or mistake, no man's will would be safe. The temptation to disappointed seekers after the testator's bounty to watch the testator, and, as his mind grew weaker, to tamper with him and induce him to make declarations that were inconsistent with the will, would be sufficient to induce unscrupulous persons to do such miserable work, and even to go farther and suborn witnesses, to swear to imaginary declarations of the testator inconsistent with the terms of his will pretended to have been made both before and after the will was executed. The statute, which requires the will to be in writing and properly witnessed, would afford but little protection to the testator or to the real objects of his bounty, if proof of such declarations could be admitted.

We have not found a single case, that warrants the introduction of such evidence. The case of *Reel* v. *Reel*, 1 Hawks 248, clearly does not approve such a doctrine. It was one of the authorities relied on in *Dinges* v. *Branson*, 14 W. Va., to show that such declarations are admissible on the question of testamentary capacity and undue influence. The only case that seems to give countenance to such a doctrine is *Nelson* v. *Oldfield*, 2 Vern. 76. In that case the evidence was that Mrs. Bettinson travelling into France for her health there fell in company with the plaintiff, who having the lady in her power prevailed upon her to solemnly swear to make her will and leave her all her estate; and when she made her will accordingly the plaintiff made her again swear, that she would not alter or revoke the will or make any other. It appeared by the deposition of Mr. Wade and by others examined in the cause, that she in her sickness often complained of how she had been circumvented by the plaintiff, and of the injury she had done her mother and sisters by giving her estate from them, that she heartily repented, that she was thus fettered, but durst not for fear of damnation revoke or alter her

will, and shortly afterwards died much troubled and afflicted that she could not alter her will. The court said the will having been proved in the spiritual court, the matter was not to be contradicted here; the plaintiff might make the best she could of her probate there, but should have no aid from this court, and therefore, dismissed the bill. There was no point made whether the declarations were admissable or otherwise. The mistake which will avail to set aside a will, is a mistake as to what it contains, or as to the paper itself, not a mistake either of law or fact in the mind of the testator, as to the effect of what he actually and intentionally did. There was no such mistake here.

The court did not err in rejecting the evidence.

All that remains are the facts certified omitting the evidence of the declarations. There is absolutely no evidence of a mistake in the execution of the will, except the declaration on the face of the will and the proof of the circumstances, that it was the desire of the testator to make an equal distribution of his property between his two children. His language is, " it being my desire to divide my property as near equally as may be between my two children Peter S. Couch and Sarah Frances Eastham." While he had this desire to be just to both his children and treat them both alike as nearly as he could, there is yet another desire, which is very strongly marked in the whole scheme of the will, and that is, that his home-farm should be kept in the family. If Peter should be the father of children, he wanted the farm to go to him in fee, trusting to him to give it to his children, but if he had no children, he wanted the farm at Peter's death to go to his daughter. Now it does not strike me, that this was an equal division of his property among his children. When we read the codicil in connection with the will, there is not the slightest doubt in our minds that Samuel Couch disposed of his property just as he wished to; that he did not make the slightest mistake in the disposition of his bounty. After permitting his will to remain for nearly sixteen months he executed his codicil, in which he shows clearly, that he did not make any mistake in the execution of the will. He repeats the very clause complained of in the bill as containing the mistake, and modifies it by requiring only *two thousand* dollars instead of *four* to be paid by Sarah Frances Eastham to

the widow of her brother in case he died without children, and then adds a clause requesting Peter not to commit waste.

We must hold that the jury decided the issue correctly, and that the verdict ought not to have been set aside.    The court therefore did not err in refusing to set aside the verdict and grant a new trial.

It is assigned as error, that the court failed to expound the will.    It would have been very improper in a case of this kind.    There was an issue *devisavit vel non.*    The bill was filed to test the validity of the will.    Upon a bill filed to test the validity of a will, which has been regularly admitted to probate, the function of the suit is exhausted when that question is decided.    (*Coalter's Ex'ors* v. *Bryan,* 1 Gratt. 18 ; *Dower* v. *Church,* 22 W. Va. 23.    It would be strange in a suit brought to set aside a will, that the will should be expounded.    The bill was properly dismissed, as the functions of the suit were exausted.

The decree dismissing the bill is affirmed.

AFFIRMED.