# CHARLESTON.

MATHEWS, &c. *v.* TYREE, &c.

Submitted March 19, 1903.    Decided April 1, 1903.

1. WILL—*Executor—Bill—Surrender.*

The executors of a will duly probated cannot compel the devisees, who are also heirs to surrender their statutory right to impeach such will in the mode provided for by statute, by filing a bill to construe such will, and as incidental thereto, asking the court to affirm the probate thereof, but the court if the heirs so request should reserve to them such right to so impeach such will. (p. 300).

2. DECREE—*Chancery.*

After a decree in a chancery cause has been passed upon and entered by the circuit court, it may be modified or set aside during the same term for good cause shown. What is sufficient cause is a matter in the sound discretion of the circuit court, subject to revision by this Court. (p. 303).

3. WILL—*Testator—Conversion—Equity.*

Where a testator divides his whole estate without regard to its legal division into two parts called "personal fund," and "real estate," and it is plainly his intention gathered from the will, the codicils and other writings that such real estate shall bear the expense of the conversion thereof into money,

equity will carry out such intention and charge such expenses to the proceeds of such real estate, although there is a general provision in the will for the payment of all debts from such personal fund. (p. 312).

Appeal from Circuit Court, Greenbrier County.

Bill by Alexander F. Mathews and others against Samuel F. Tyree and others. Decree for plaintiffs, and defendant William P. Bolling and others appeal.

*Modified.*

MOLLOHAN, McCLINTIC & MATHEWS, for appellants.

A. F. MATHEWS and GILMER & GILMER, for appellees.

DENT, JUDGE:

William P. Bolling and others appeal from certain decrees of the circuit court of Greenbrier county in the chancery cause of Alexander Mathews and J. W. Johnston, executors of the last will and testament of Wm. M. Tyree, plaintiff, against the appellants and others, defendants, and rely on numerous assignments of error which may be considered under the following classification:

1. In adjudicating the validity of the will in this suit.

2. In erroneously adjudicating the validity of the will on the pleadings and without affording the parties opportunity to produce their proof.

3. In not suspending proceedings until the validity of the will could be determined in a subsequent suit instituted by Mollie T. Tyree, one of the defendants in the circuit court of the United States for the Southern District of West Virginia at Charleston for this purpose.

4. In deciding that Davis and Priddle claims were properly payable out of the personal fund rather than the proceeds of the real estate sold to J. L. Beury.

The plaintiffs filed their bill for the main purpose of having the will construed, and as incidental thereto they allege "that the said will and codicils were in all respects valid and effective, that they are free from every infirmity and are not subject to objections on any ground or for any reaason whatever." And they pray that the court "will pass upon and decide as to the validity and force of said will and the true con-

struction thereof." The purpose of such allegations was to require the defendants if they had any objection to the probate and validity of the will for any cause to assert it so that there might be an end to litigation and the court's labor in construing the will might not turn out to be useless and abortive. 22 En. Plead. & Prac. 1215; 2 Story's Eq. Jur. sec. 1447; 1 Pomeroy (Ed. 1881) sec. 171, 183. In 2 Story's Equity Jur., sec. 1445, it said: "But although * * * * * * courts of equity will not in an adversary suit entertain jurisdiction to determine the validity of a will, yet whenever a will comes before them as an incident in a cause, they necessarily entertain jurisdiction to some extent over the subject, and if the validity of the will is admitted by the parties, or if it is otherwise established by the proper modes of proof they act upon it to the fullest extent. If either of the parties should afterward bring a new suit to contest the determination of the validity of the will so proved, the court of equity which has so determined it would certainly grant a perpetual injunction." Sestion 1446, "the usual manner in which courts of equity proceed in such cases is this: if the parties admit the due execution and validity of the will, it is deemed *ipso facto* sufficiently proved." But if the parties contest the validity of the will the court either suspends proceedings in the cause until the parties try its validity before the proper tribunal, or it directs an issue of *devisavit vel non.* "In such cases the jurisdiction exercised by courts of equity is somewhat analogous to that exercised in cases of bills of peace; and it is founded upon the like considerations in order to suppress interminable litigation and to give security and repose to titles." Section 1447. It is also said in note to said section that "The heir at law cannot come into equity for the purpose of having an issue to try the validity of the will at law, unless it be by consent." And further, "Courts of equity do not seem to have any direct or original authority to establish the validity of a will of real estate *per se,* but only as incidental to some other object." Mr. Pomeroy on page 171, sec. 171, enumerates among other powers of a court of equity the establishment and construction of wills. There seems to be no good reason why executors in filing a bill to construe a will should not as an incident thereto call upon the devisees, parties to the suit, to admit or deny the validity of the will, that

there may be an end to litigation, and they elect to accept the provisions of the will or repudiate them; being analogous to cases of election wherein it is said "that a person who is entitled to any benefit under a will or other instrument must, if he claims that benefit abandon every right or interest the assertion of which would defeat, even partially any of the provisions of that instrument. 11 A. & E. En. Law (2d Ed.) 60. In *Birmingham* v. *Kirwin,* 2 Sch. & Lef. 449, it is held: "The general rule is that a person cannot accept and reject the same instrument." A summoned party who fails to answer and accepts the provisions of the will would be bound by the decree, and could not afterwards attack the validity of the will thereby establish. But it is claimed that the jurisdiction to impeach or establish wills is fixed by statute, and is mere probate jurisdiction. In the cases of *Dower* v. *Church,* 21 W. Va. 23, *Couch* v. *Eastman,* 27 W. Va. 796, and *Kerr* v. *Lunsford,* 31 W. Va. 659, the following Virginia decisions, this Court held that in a suit to test the validity of a will on an issue *devisavit vel non,* the functions of the suit were exhausted when this question was settled, and it was improper to proceed to a construction of the will rightly so for the good reason that a person cannot accept and reject the same instrument at the same time. A court of equity will not entertain such inconsistent pleadings. The Virginia decisions hold that in suits brought to impeach the validity of a will the court performs no other function than to superintend the jury; that it is the duty of the court to make up and submit the issue, and there its function ends. The language of the Virginiaa statute is, "An issue shall be made up whether the writing produced be the will or not." About making up this issue, neither the court or the parties have any discretion. Our statute, ever since the division of the states has been entirely different and is, "if required by either part, a trial by a jury shall be ordered." In Virginia the court had no authority even by consent of the parties to determine the validity of a will. In our state the parties may waive a jury as in all other cases of conflicting evidence, and submit the question of validity to the court for determination. Hence the court has the power to determine the matter without the intervention of a jury. This makes

a vast defference in the law, although a court of chancery may still be regarded as a probate court in passing on the validity of a will. But when it comes to the establishment of a will an entirely different question is presented. While there is a conflict between the impeachment of the will and its construction, there is none between the establishment of a will and its construction. To construe a will is to establish it according to the intention of the testator. In the case of *Robinson* v. *Allen,* 11 Grat. 785, it was held that where a will has been regularly admitted to probate in the proper court, its validity could not be questioned in a collateral proceeding. Samuels, J., said, "It is well settled by the decisions of this court that the sentence of a court of probate, of competent jurisdiction, admitting a will or writing in nature of a will, to probate, is conclusive evidence of the due making thereof, and that it cannot be denied in any collateral proceeding touching the will, that its validity can be tested only by resorting to the means provided by law for this specific purpose." This decision was rendered under the provisions of the statute of Virginia that gave the chancellor no power in will cases except to impannel a jury. Under our statute without the parties require a jury, the chancellor must pass upon and determine the validity of a will. And there is no good reason why having the power to establish a will, he should not have the power to construe it, the necessary parties in interest being before the court. Otherwise in a suit to establish a will he must say, "this is a true will of the testator, but before I can construe it, and thus establish it according to the intention of the testator, the parties must all walk out one door of the court house and come in at the other. It is true that it might be necessary to have other parties before the court, such as the executor who could not be appointed until the will was established. Hence the court must wait until a new bill is filed bringing in all necessary parties interested in the construction of the will. This does not prevent the executor in filing a bill to have the will construed, from calling upon the devisees to either accept or reject the will, for they will not be permitted to do both. *Dickinson* v. *Dickinson,* 2 Grat. 493; *Kinnard* v. *Williams,* 8 Leigh 400.

The will having been duly probated is unimpeachable except in the manner provided by statute. The devisees under the

will may waive statutory right to impeach the same. As they would have the right to file a bill for impeachment in the same court which has jurisdiction of the subject matter, they may be bound by a decree to which they impliedly consent confirming the validity of the will. If they wish therefore to avoid the legal effect of such decree, they must have their statutory right to impeach the will in some manner reserved to them. The question has been mooted as to whether a devisee who is also an heir could file a cross bill, or an answer in the nature of a cross bill to test the validity of a will in a suit brought to construe it. He can undoubtedly file an original bill in the same court for such purpose, and have the matter determined by the same judge. A cross bill or an answer in the nature of a cross bill would accomplish the same end. The same procees would have to issue. The same judge could make the same orders, and have the same jury trial under all three. Or he could treat them interchangeably, one for the other under our liberal practice. This might not be proper in Virginia for the reason that a' *devisavit vel non* must always be tried by a jury. This being a matter of practice not necessary for the determination of this controversy is left for future decision of the court, when a proper case may arise. The appellant defendants did not file in the circuit court either an original bill, a coss bill or an answer in the nature of a cross bill. As for myself, I view our statute as clothing a court of chancery with the same jurisdiction in will cases, subject to the statute of limitations of five years where the will has been probated *ex parte,* as in other matters.

Out of deference to the view of other members of the Court, who still stick to the separate probate idea and who claim that the statute confers the right of impeachment or establishment upon individuals rather than jurisdiction upon a court of chancery I for the present yield my own and submit to their views. There is no doubt, however, that this is a case wherein the parties in interest may waive their right to a separate suit and consent to the jurisdiction of the court. 17 Am. & En. En. Law (2d Ed.) 1065. In the interest of peace, the quieting of titles, and the settlement of estates, the court should have the power in a proper case to compel submission to its jurisdiction without the circumlocution of unnecessary pleadings and procedure.

The defendant Samuel F. Tyree filed an answer admitting that the will should be declared valid. This, however, while a good admission as to himself has no biding effect upon the other defendants, nor does such answer otherwise add any force to the bill.

The appellants, though duly notified, failing to appear to make any defence, the court entered a decree by confession, and an order of publication declaring the will valid and construing it. Afterwards, at the same term of court, the appellants appeared and filed the affidavit of George W. McClintic, one of their attorneys, and moved the court to set aside or reform the decree so as to prevent it being an adjudication of the validity of the will. This motion, being overruled, they presented and filed the petition of appellants and renewed their motion, which was again overruled, but the court granted them the privilege of demurring to and answering the bill. They afterwards demurred to the bill and filed their answers, to which plaintiffs replied generally and again moved the court to set aside the decree and suspend all further proceedings until a suit brought by one of them in the circuit court of the United States in and for the District of West Virginia, for the purpose of testing the validity of the will could be heard. It appears that such suit was not instituted until about the time the decree complained of was entered. The court overruled the demurrers, refused to set aside the decree, continue the cause or to suspend proceedings awaiting the validity of the will to be determined by another tribunal.

It has been held by this Court that "Until the term ends, every judgment or decree entered may for good reason be modified or set aside in whole or in part. The court has a discretion to do this in the exercise of which this Court will not interfere except for the most cogent reasons." *Bank* v. *Neale*, 28 W. Va. 744. What is good reason for setting aside a judgment at law has been settled in the case of *Pose* v. *Carr*, 42 W. Va. 72, where it is said in first point in syllabus, "Such good cause can only appear by showing fraud, accident, mistake, surprise or some other adventitious circumstances beyond the control of the party and free from neglect on his part."

When we look at the motions made and the answers and affidavits filed by the appellants, the conclusion is forced upon

us that the only object sought by the appellants was to have the right reserved to them to impeach the will under section 32, chapter 77, Code. This right so reserved to them under such section cannot be taken from them, unless they have in some manner waived it as heretofore shown. They did not want the validity of the will for some reason finally determined in this suit. All they did in this direction appears to have been pure matter of desperation.

If appellants had appeared and asked it in time, it was the duty of the court to have reserved to them their right of impeachment under the statute.

The affidavits show that by a misunderstanding between counsel appellants counsel neglected to appear and insist on a reservation of their right of impeachment prior to the entry of the decree. It is plain that they never intended to surrender this right, and if lost to them, it was caused by an oversight or misunderstanding. In such cases the rule of equity practice is almost as stringent as that at law, yet equity always endeavors to relieve against surprise and mistake and preserve to parties all their legal rights unless they have clearly waived or surrendered them. While there was no good ground for continuance or stay of proceedings presented, and while the case was rightfully for the plaintiffs as there was no proper issue as to the validity of the will made up between the proper parties in the method required by the statute, and the court did not err in overruling appellant's motion and refusing to set aside the decree, the court should have reserved to appellants their statutory right to impeach the will in any proceeding they might be advised to bring for that purpose. It was not error for the court to refuse to postpone its decree or proceedings to await the suit alleged to have been instituted in the circuit court of the United States.

Nor was the circuit court, nor is this Court called upon to determine the jurisdiction of such district court in probate cases. This is a question to be determined by that court alone. All that this Court can do is to amend the decree so as to reserve to the appellants their statutory right to file a bill to impeach the will of their testator without regard to what court they may select to determine the question for them. Under the circumstances of this case, this appears to be proper, otherwise

the appellants by mere inadvertance of counsel will be deprived of a plain statutory right. It would be inequitable so to treat them. This, however, should not delay the construction of the will, as such suit may never be prosecuted, at least successfully, and creditors are entitled to the payment of their debts.

The construction of the will requires a careful examination thereof, and its codicils. It is as follows, to-wit:

"I, William M. Tyree, do hereby make and publish this as my last will and testament in manner and form following, viz:

1st. I direct that my executors, hereinafter named and appointed, shall proceed to collect according to their judgment and discretion, all debts and demands due and belonging to me and evidenced by notes, bonds, open accounts or otherwise, except certain notes or bonds which I hold on and of J. A. Amick and W. A. Amick, and which they shall not press for payment and collection until certain lands, owned jointly by me and the said Amicks shall have been sold. And I further direct that my said executors shall only charge and collect from the said Amicks interest on their said notes at the rate of three (3) per cent. per annum from the time and dates at which they become interest bearing.

2nd. I hereby authorize, empower and direct my said executors to sell all the personal property in the way and form of goods and chattels belonging to me, and which I may have, except such of said goods and chattels as are hereinafter specifically bequeathed and also to sell all the real estate of which I may be seized and possessed or which may belong to me either in law or in equity and which I own either severally and solely or jointly with some other person or persons. And in the term 'Real Estate' as here used, I mean, intend and include, besides other property, my interest in what is known as the "Upper Potts Creek' or 'The Potts Valley Furnace and Mining Co.' property, notwithstanding the fact that my said interest is represented by certain shares of stock in the said Company, and might and probably would but for this express diretcion and provision to the contrary, be regarded and considered as personal property.

And I further direct that whatever and in whatever connection the words 'real estate' are used in this papers they shall

be understood and construed as meaning, intending and inclu-
ding my said interest or stock in said 'Upper Potts Creek' or
the 'Potts Valley' Furnace and Mining Company' property.
And I also further direct that the said term 'real estate' wherev-
er herein used shall be taken, understood and construed to mean,
intend and include not only lands owned by me in fee and
absolutely, but also all mineral rights owned by me under lands
I do not own the surface.

3rd. I direct, empower and authorize my said executors
to, make said sales either publicly or privately, at such time or
times, at such place or places, in such manner and form, and
upon such terms as they may deem proper, most judicious and
best for the interests of my estate.

4th. I hereby authorize and empower my said executors
to execute any and all deeds, title bonds and other papers that
may be proper or necessary to carry out, effectuate and con-
summate any and all sales to be by them made as aforesaid.
And I further empower and authorize them to execute any deed
or other papers that may be necessary or proper to carry out
and perfect any contract or agreements, whether oral or in writ-
ing, which I may have made and which still remain unexecu-
ted.

5th. Out of the personal fund of my estate, consisting of
money on hand, the proceeds of collection and of the sales of
goods and chattels, I direct that my executors retain and use
a sufficient amount for the payment of any and all debts due
from and owing by me, and of all levies, taxes and assessments
accrued or that may accrue on my entire estate, real or per-
sonal until the same shall have been converted, disposed of and
distributed and the business of my whole estate wound up and
closed, as herein, by this my last will provided and directed.

6th. I give and bequeath my gold watch and chain to my
nephew W. F. Tyree; my 'Harry Beirne' bay mare, my saddle
and bridle to my nephew Harry Tyree; my buggy and harness
to J. W. Johnston; and my black horse to Mary Feamster, a
daughter of Frank Feamster, dec'd, who lives with John John-
ston.

7th. I give and bequeath and direct my said executors to
pay, out of the personal fund of my estate the following sums
or legacies to the following names persons severally and re-
spectively, viz:

To my brother Samuel F. Tyree (3000) three thousand dollars.

To my nephew W. F. Tyree (1000) one thousand dollars.

To my nephew Frank A. Tyree (1000) one thousand dollars.

To my niece Martha Tyree, daughter of my deceased brother John (1000) one thousand dollars.

To my nephew William P. Bolling (1000) one thousand dollars.

To my nephew John Bolling (1000) one thousand dollars.

To my nephew Dr. Lewis Bolling (1000) one thousand dollars.

To my niece Mrs. Annie Erwin nee Bolling (1000) one thousand dollars.

8th. I give and bequeath and direct my executors to pay the rest and residuum of the personal fund, as aforesaid of my estate to the pecuniary legatees above named in the 7th clause of this papers, and to my niece, Mrs. Mollie Tyree, nee Bolling, to be given, shared and distributed between them upon the basis and in the proportion of the legacies above bequeathed, and as to the said Mollie Tyree as if she were a legatee herein, and had been hereby given a legacy of (1200 twelve hundred dollars.

9th. I give, devise and bequeath to my brother, Samuel F. Tyree, all the net proceeds of all my real estate as aforesaid, to be said by my said executors as aforesaid and as and when sold. And I direct my executors to pay over to my said brother the said net proceeds as and when collected and realized from such sales to be by them made.

10th. I direct that there shall be no inventory, appraisement or sale of any or all of my estate either real or personal save and except such sales as are hereinbefore authorized and directed and which shall be made as herein provided for and fully set forth.

11th. I hereby appoint my friends Alex's F. Mathews and J. W. Johnston to be the executors of this my last will and testament. And having entire confidence in their business capacity and integrity I direct that no security be required of them on their executorial bond.

And .

In witness of all the foregoing I hereto set my hand and affix my seal this the 1st day of August, 1900.

                              William M. Tyree.      (Seal.)

## Codicil No. 1.

I, William M. Tyree, do hereby make, publish and declare this to be a codicil to my will, dated August the first, 1900, and to which this codicil is to be annexed and attached, in manner and form following, viz:

1st. In the term and words "Real Estate" as used in my said will, I mean, intend and include, besides other property my interest in what is known as "The Lower Potts Creek" or "The Potts Mining and Manufacturing Co." property notwithshanding the fact that my said interest is represented by certain shares of stock in the said company, or by an interest in the notes executed for said property by "The Valley Ore Co." to Alex's F. Mathews, Trustee, and might and probably would but for this express direction and provision to the contrary, be regarded and considered as personal property. And I further direct that whenever, and in whatever connection the words "Real Estate" are used in my said will they shall be understood and construed as meaning, intending and including my said interest or stock in said property, in the said "Potts Valley Mining and Manufacturing Co." and in said notes of "The Valley Ore Co."

2nd. I hereby give and bequeath to my brother Samuel F. Tyree all my wearing apparel and all my personal chattels and belongings which are not by the terms of my said will specifically disposed of and bequeathed.

3rd. I hereby give and bequeath to my said brother Samuel F. Tyree my bay horse recently bought by me from W. W. McClung but subject to this provision and condition that the said McClung shall have the right at his option to purchase said horse from my executors at the price paid him therefor by me, which is $150.00.

4th. In the event W. W. McClung exercises said right and purchases said horse from my executors at said price then I hereby give and bequeath the said amount to arise from such sale to my said brother Samuel F. Tyree, and direct the same to be paid over to him by my said executors.

5th. I hereby direct that, as to the said wearing apparel, my other personal chattels and belongings and as to said horse in the above items 2nd, 3rd and 4th of this codicil mentioned items 2nd and 8th of my said will be modified accordingly.

And

In testimony of all the foregoing I hereto set my hand and affix my seal the 20th day of December, 1900.

Wm. M. Tyree.    (Seal.)

### Codicil No. 2.

I, Wm. M. Tyree, do hereby make, publish and declare this to be codicil No. 2 to my will dated August 1, 1900, and to which this codicil is to be annexed and attached in manner and form following, viz:

Whereas, if the real estate owned by me at the time and date of the execution of my said will, and of what is meant and intended by and included in said term "real estate," as used and defined in said will and in codicil No. 1 thereto attached, some part or portion, or parts or portions may be sold, alienated and disposed of by me and converted thus into personal property, now therefore in the event of any such sale or alienation of any part or parts of said property by me and in my life time as aforesaid, I do hereby will and direct that all the proceeds of such sales and alienations either not collected by me, or if collected, not used and disposed of by me in person and so far as said proceeds remain at my death either uncollected or if collected, not used and disposed of by me, notwithstanding the then personal character of said proceeds shall be understood to be meant and intended by and included in the term "real estate," and shall be disposed of as real estate under the provisions and directions of my said will and codicils whenever, wherever and in whatsoever connection therein the said term is used. And no part of such proceeds shall be treated or disposed of as personal property within the meaning and purposes of said will and codicil.

And

In testimony of all the foregoing I herewith set my hand and affix my seal this the 15th day of January, 1901.

Wm. M. Tyree.    (Seal.)

Greenbrier County Court,
April Term, 1901, April 9, 1901.

A paper purporting to be the last will and testament of Wm. M. Tyree, dec'd with two codicils thereto was this day pro-

duced in open court and proved by the oaths of Alex'r F. Mathews and Mason Mathews subscribing witnesses thereto and ordered to be recorded as the last will and testament and codicils thereto of Wm. M. Tyree, dec'd.

Teste:  C. B. Buster, Clerk.
A copy.  Teste:  C. B. Buster, Clerk.

During his life time and about the time of the making of his last codicil the testator sold and conveyed a large tract of land or rather many tracts of land, in conjunction with others to J. L. Beury, the purchase price of which is a very large sum of money being at the rate of $10.00 and $11.00 per acre. In connection with these sales he executed the two following papers, to wit:

"Out of the sale of lands this day made situated in Fayette, Greenbrier and Nicholas counties, West Virginia, made by myself, J. W. Johnson, W. A. Amick, J. A. Amick, L. E. McClung and S. L. Price to J. L. Beury or D. C. T. Davis as trustee for said J. L. Beury, I hereby promise, personally and individually, out of the cash payment made for said lands, to pay to D. C. T. Davis fifty cents per acre for each and every acre of said lands so sold and conveyed.

Witness my hand and seal, this 24th day of January, 1901.
(Signed)  Wm. M. Tyree.  (Seal.)"

"Out of the sale of the land this day made, situate in Fayette and Nicholas counties, West Virginia, made by myself, J. W. Johnson, W. A. Amick, J. A. Amick to J. L. Beury or to D. C. T. Davis as trustee for said J. L. Beury, I hereby promise personally and individually, out of the cash payment made for said lands to pay B. L. Priddie the sum of fifty cents per acre for each and every acre so sold and conveyed in which said Amick now has any interest.

Witness my hand and seal, this 24th day of January, 1901.
Wm. M. Tyree.  (Seal.)"

The allowance to Davis appears to be commission for making sale and that of Priddie is to pay him for releasing a prior option he held against a large portion of the lands at $9.00 per acre. Hence, both of these obligations arise from and were regarded by Wm. M. Tyree as part of the expense of the sale

to J. L. Beury. They amount at the date of the decree to the
sum of $9,664.96.

The circuit court decreed this sum to be paid out of what
the will denominates the personal fund. The applicants insis-
ted that this sum should be paid out of the real fund and this
matter was necessarily included in their motion to set aside the
decree. The circuit court overruled their motion; they now
insist that the court erred in this respect. An inspection of the
will shows that the testator divided all his property without
regard to its legal division into two funds, one of which he
calls personal fund and the other real estate. Out of the per-
sonal fund, after providing for payment of all his debts, he
makes numerous specific legacies to those who would have been
his legal heirs, and then provides for the division of the resi-
due among his legatees in proportion to their legacies. Samuel
F. Tyree is much the largest legatee as to this fund. The tes-
tator then provides for the sale of all his real estate including
certain interests in mining stocks, all of which he denominates
real estate, and directs his testator to pay the net proceeds there-
of to his brother Samuel F. Tyree.

By codicil No. 2, which was executed about the time of his
sales to Beury, he provides that the proceeds of any sales by
him made shall be treated as real estate in so far as not collected,
or if collected not disposed of by him in his life time. It was
plainly the intention of the testator to keep the two funds entire-
ly separate, the personal and the real fund. It is just as plainly
his intention to have paid the Davis and Priddie debts out of
the real fund during his life time, but not having done so Sam-
uel F. Tyree insists that the will speaking as of the day of his
death makes them payable out of the personal fund. But mak-
ing the bequest of his real estate speak as of the date of his
death Samuel F. Tyree is only to have the net proceeds thereof,
meaning thereby that the expenses incurred in the sale thereof
must be first paid. Codicil No. 2 provides that the proceeds
of the real estate shall be disposed of as provided in the main
will and this is that the "net proceeds" thereof shall go to
Samuel F. Tyree thus showing plainly that it was his intention
that from the sale of his real estate the necessary expenses must
be deducted before the "net proceeds" should be paid over
to the legatee. The expenses attached to the sale of his real

estate made by himself was not contemplated by the testator either at the date of his death or at the date of the will, properly speaking as such debts, as would be chargeable to the personal fund. On the contrary he shows that he wants the real estate to bear the burden of its conversion into money. This intention he carries out in his dealings with Priddie and Davis, for he executes to them writings showing that the shares due them for their assistance in the sale are to be paid out of the proceeds thereof, even out of the cash payment. This not only shows the time of the payment but the appropriation or assignment of the fund for this purpose. Equity regarding that done which ought to have been done will consider an amount sufficient of the proceeds of the real estate as already appropriated or assigned by the testator prior to his death for this purpose and hold the executors as trustees thereof. This being the case and the real estate funds being ample, there would be no debt chargeable against the personal fund by reason of these claims, as ample provision for the satisfaction thereof had been made by the testator during his lifetime. There is no doubt that this is morally, equitably and legally right, and in full accord with the intention of the testator.

The decree will be so modified and corrected as to provide that the claims of D. C. T. Davis, Jr., amounting at the date of the decree to the sum of $6,133.30 and B. L. Priddie, amounting at the date of the decree, including a credit of $500.00, to the sum of $3,513.36, be paid from and charged by the executors to the proceeds of the sales of the real estate made by the testator during his life time to J. L. Beury, to the relief of the personal fund, and to reserve to appellants their statutory right to impeach the will of Wm. M. Tyree, deceased, in any proper suit for that purpose, and as modified and corrected will be affirmed with costs to the appellants to be paid by the executors out of the funds in their hands bequeathed to Samuel F. Tyree. The cause is remanded for further proceedings.

*Remanded.*